1  Lisa T. Belenky (CA Bar No. 203225)
   lbelenky@biologicaldiversity.org
2  Justin Augustine (CA Bar No. 235561)
3  jaugustine@biologicaldiversity.org
   CENTER FOR BIOLOGICAL DIVERSITY
4  1212 Broadway, Suite 800
5  Oakland, CA 94612
   Telephone:  (510) 844-7107
6  Facsimile: (510) 844-7150
7
8  *Attorneys for Plaintiff*
   *Center for Biological Diversity*
9
10 Rachel S. Doughty (CA Bar No. 255904)
   rdoughty@greenfirelaw.com
11 GREENFIRE LAW
12 1202 Oregon Street
   Berkeley, CA 94702
13 Telephone: (828) 333-4703
14 Facsimile: (510) 900-6262

15 Matt Kenna (CO Bar No. 22159)
   matt@kenna.net
16 Public Interest Environmental Law
17 679 E. 2nd Ave., Suite 11B
18 Durango, CO  81301
   Telephone: (970) 385-6941
19 Applicant *Pro Hac Vice*
20
   Douglas P. Carstens (CA Bar No. 193439)
21 dpc@cbcearthlaw.com
22 CHATTEN-BROWN & CARSTENS
   2200 Pacific Coast Highway, Ste. 318
23 Hermosa Beach, CA 90254
24 Telephone: (310) 798-2400
   Facsimile: (310) 798-2402
25
26 *Attorneys for Plaintiffs Story of Stuff Project*
   *and Courage Campaign Institute*
27

28 Complaint for Declaratory and Injunctive Relief
   Case No. 5:15-cv-2098

1

2

3

4

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

5

6

7

8

9

10

11

12

13

14

15

16

17

18

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, STORY OF STUFF PROJECT, and COURAGE CAMPAIGN INSTITUTE, ) ) ) ) ) | Case No. 5:15-cv-2098 |
| Plaintiffs, ) ) | |
| vs. ) ) ) | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, RANDY MOORE, in his official capacity as Pacific Southwest Regional Forester, and JODY NOIRON, in her official capacity as Forest Supervisor for the San Bernardino National Forest, ) ) ) ) ) ) ) ) ) | |
| Defendants. ) ) | |

19

20

21

22

23

24

25

26

27

28

### I.   INTRODUCTION

1.     This is an action for declaratory and injunctive relief brought by Plaintiffs the Center for Biological Diversity ("the Center"), Story of Stuff Project ("the Project"), and Courage Campaign Institute ("Courage Campaign"), in connection with actions and inactions of the United States Forest Service ("USFS") in relation to water diversion and transmission facilities constructed and operating on USFS land in and near the West Fork of Strawberry Creek ("West Strawberry Diversion Structures") in the San Bernardino National Forest. This facility is operated by Nestlé Waters North America, Inc. ("Nestlé"), in order to supply its

Complaint for Declaratory and Injunctive Relief
Case No. 5:15-cv-2098

1  "Arrowhead" line of bottled drinking water.  Although the USFS issued a special
2  use permit allowing this occupation of public lands in 1976 (amended 1978 and
3  1981) ("Permit"), the Permit expired and was void on August 2, 1988, and no new
4  special use permit has ever been issued. Nestlé, an alleged successor in interest to
5  the original holder of the Permit has, with the express permission of the USFS,
6  continued to operate, and has maintained, modified, and replaced portions of the
7  West Strawberry Diversion Structures since the Permit expired. Pursuant to the
8  requirements of the Federal Land Policy Management Act, 43 U.S.C. § 1701 et
9  seq. ("FLPMA") and its implementing regulations, the USFS may not allow
10 operation and/or expansion of the West Strawberry Diversion Structures without a
11 valid and current special use permit. Plaintiffs seek an order requiring the USFS to
12 comply with FLPMA and enjoining operation of the West Strawberry Diversion
13 Structures pending compliance with FLPMA.

## II.  JURISDICTION AND VENUE

15     2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§
16 1331 (federal question), 28 U.S.C. §§ 2201-2 (declaratory judgment and injunctive
17 relief), and the Administrative Procedure Act, 5 U.S.C. § 701, et seq. ("APA").
18     3.     Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e)
19 because this is an action against United States agencies and officials and because a
20 substantial part of the events and omissions giving rise to the claims in this case
21 occurred in this District.

## III.  PARTIES

23     4.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("Center") is a
24 non-profit corporation with offices in California, Arizona, New Mexico, Oregon,
25 and Washington, D.C. The Center is actively involved in species and habitat
26 protection issues throughout the United States and has focused on protection of
27 public lands, including Forest Service managed lands, for decades. The Center has
28 Complaint for Declaratory and Injunctive Relief                              1
   5:15-cv-2098

over 50,000 members throughout the United States, including many members who reside in Southern California and live, visit, or recreate in the San Bernardino National Forest near the West Strawberry Diversion Structures and Strawberry Creek. The Center's members and staff intend to continue to visit and recreate in the affected areas in the future for various educational, scientific, aesthetic and other purposes. The Center's members and staff have educational, scientific, biological, aesthetic, and spiritual interests in the resources of the San Bernardino National Forest including water resources and the species that depend on water resources.  The Center, its members, and staff have participated in efforts to protect and preserve the resources of the San Bernardino National Forest including water resources and water dependent resources which Plaintiffs allege are impacted by the ongoing use of the expired special use permit at issue in this action.

5.      Plaintiff STORY OF STUFF PROJECT ("The Project") is a non-profit corporation headquartered in California. The Project's staff facilitate an online Community of more than one million members worldwide dedicated to transforming the way we make, use, and throw away disposable consumer items. The Project, its staff and its Community members have been actively involved in environmental sustainability and resource conservation efforts since its founding in 2008. The Project has more than 30,000 members in California, including more than 800 who live in San Bernardino County, near the San Bernardino National Forest. The Project's members regularly visit or recreate in and near the Forest and the West Strawberry Diversion Structures and Strawberry Creek and intend to continue to do so regularly in the future. The Project's members have expressed profound concern about the diversion of water resources from the Forest and the impact that has to the flora and fauna that depend on that water, which are critically impacted by the ongoing drought conditions.

Complaint for Declaratory and Injunctive Relief
5:15-cv-2098

2

6.    Plaintiff COURAGE CAMPAIGN INSTITUTE ("Courage Campaign") is a non-profit corporation in California. Courage Campaign Institute is the educational arm of the Courage Campaign family of organizations with more than 1,000,000 members. Its mission is to fight for a more progressive California and country by defending and extending human rights through innovative leadership-development training, strategic research and public education. Courage Campaign's members and staff have been actively involved in various responses to the historic California drought, including a campaign asking Nestle to cease bottling water in California. Courage Campaign has 9,167 members who live in San Bernardino County, near the San Bernardino National Forest. Courage Campaign's members regularly visit or recreate in and near the Forest, and intend to continue to visit and recreate in the affected areas regularly in the future for various educational, scientific, aesthetic and other purposes. Courage Campaign's members have expressed profound concern about the diversion of scarce water resources from public lands, and the impact that has to the flora and fauna that depend on that water, especially where critically impacted by the on-going drought conditions.

7.    The above-described aesthetic, conservation, recreational, scientific, educational, and other interests of Plaintiffs' staff, boards, and members have been, are being, and, unless the relief prayed for herein is granted, will continue to be adversely affected and irreparably injured by the Defendants' actions and inactions in allowing the West Strawberry Diversion Structures to continue to occupy federal land and divert water without a valid special use permit, which diversion has contributed to dewatering of Strawberry Creek and impacts to the resources of the area including loss of habitat for aquatic and riparian obligate species.

8.    The injuries described above are actual, concrete injuries suffered by Plaintiffs' staff, boards, and members.  These injuries are caused by Defendants'

Complaint for Declaratory and Injunctive Relief
5:15-cv-2098

3

actions and inactions in allowing Nestlé to continue to operate, modify, and at times substantially replace key components of the West Strawberry Diversion Structure without a valid special use permit.

9.     The relief sought herein would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law.

10.     Defendant UNITED STATES FOREST SERVICE ("USFS") is an agency of the United States Department of Agriculture. The USFS is responsible for the administration and management of the federal lands subject to this action in compliance with all pertinent laws including FLPMA, NFMA, and the APA.

11.     Defendant RANDY MOORE is the Southwestern Region (Region 5) Regional Forester. In that capacity, he is responsible for ensuring that all national forests in the region are managed in compliance with all pertinent laws including FLPMA and the APA. Defendant Moore is sued in his official capacity

12.     Defendant JODY NOIRON is the Forest Supervisor for the San Bernardino National Forest. In that capacity, she is directly responsible for properly managing special use permits in the Forest and ensuring that the Forest complies FLPMA, NFMA, and the APA. Defendant Noiron is sued in her official capacity.

## IV.  FACTUAL ALLEGATIONS

**The Challenged Project and Impacted Environment**

13.     The West Strawberry Diversion Structure is located near the West Fork of Strawberry Creek in the San Bernardino National Forest on the side of the steep mountain face overlooking the city of San Bernardino. The West Fork drains into Strawberry Creek, which flows beneath a large natural formation resembling an arrowhead that is a local landmark, and then enters the city.

14.     The West Strawberry Diversion Structure consists of eleven access points that are tunnels, boreholes, and horizontal wells drilled as deep as 490 feet

Complaint for Declaratory and Injunctive Relief                                    4
5:15-cv-2098

into the mountain, operated by Nestlé. Water from these diversions is collected and then conveyed in a metal pipe that travels several miles down the mountain, including within the bed of Strawberry Creek and its tributaries and their adjacent riparian habitat as well as outside of these areas. The majority of the diverted water is then piped into trucks, eventually to be bottled and sold throughout the United States under Nestlé's signature premium brand name: Arrowhead Springs.

15.    Removal of large amounts of water at the highest elevations of the watershed is having an environmental impact at the well, borehole, and tunnel sites as well as throughout the entire downstream watershed.

16.    Strawberry Creek and its tributaries and their associated vegetation support a large diversity of riparian species, but likely to be reduced in numbers because of historic and current diversions coupled with drought. Riparian habitat in the drainage is limited to the area that still receives surface or near surface flows in the Strawberry Creek watershed. As in most of Southern California, summer flows in the watershed are generally low. Summer storms add temporarily increased flow, but the higher flows quickly revert to a lower level generally supported by groundwater. The extent of stream flow in the summer time in Strawberry Creek has been far lower than normal in recent years, in part due to the ongoing drought. The year-round diversion of substantial amounts of water using the West Strawberry Diversion Structure seriously affects summer flows in Strawberry Creek and amount of life that the watershed can support.

17.    There would be much more and improved riparian and woodland habitat if natural flows were returned to Strawberry Creek and its tributary. This habitat is dependent upon consistent availability of surface water or near-surface water. During drought periods, even the areas that have supported this habitat in wetter years are reduced. Species such as canyon live oak, bigcone Douglas-fir, and California bay are currently being adversely affected by the removal of so

Complaint for Declaratory and Injunctive Relief                                        5
5:15-cv-2098

much water. These species do not require year-round surface water, but require some subsurface moisture in summer to persist.

18.    Many of the imperiled species of plants and animals in the watershed depend on aquatic, riparian, and woodland habitat. Least Bell's vireo, southwestern willow flycatcher, California spotted owls, two-striped garter snake, southern rubber boa, Santa Ana speckled dace, mountain yellow-legged frog, and other riparian obligate species are known to use or have used the suitable water-dependent habitat in and adjacent to Strawberry Creek. Their numbers and resilience would likely be increased with improved water supply.

19.    The Strawberry Creek drainage is a very important and somewhat unique landscape element because of its east/west flow. Most of the drainages in the San Bernardino front country drain directly down the mountain in a north/south direction. As a result, the Strawberry Creek drainage provides a link between habitat in the drainages flowing perpendicular to it. Maintaining more natural flows in the Strawberry Creek drainage is critical, especially in dry years, to enhance the value and functionality of this important linkage.

20.    Scenic values and recreational values are being adversely affected by the excessive removal of water from the Strawberry Creek Watershed. There would be more forest and woodland—preferred recreational destinations for Forest visitors --if there were natural water flows. Relatively natural front country chaparral drainages, like Strawberry Creek with perennial stream flows, are in short supply in Southern California, especially in the San Bernardino National Forest.

**Legal Background: USFS Special Use Permits**

21.    The USFS is authorized under FLPMA to grant or renew rights of way upon USFS lands for various special uses, including "pipes, pipelines ... and

Complaint for Declaratory and Injunctive Relief                                    6
5:15-cv-2098

1  other facilities and systems for the impoundment, storage, transportation, or
2  distribution of water." 43 U.S.C. §§ 1761-66; 36 C.F.R. §§ 251.50-65.

3       22.    Special use permits for such rights of way must be subject to terms
4  and conditions that, *inter alia*, ensure compliance with federal and state laws
5  regarding air and water quality and environmental protection, and that "minimize
6  damage to scenic and esthetic values and fish and wildlife habitat and otherwise
7  protect the environment." 43 U.S.C. §1765.

8       23.    NFMA requires the USFS to develop, maintain, and, as appropriate,
9  revise a land and resource management plan ("LRMP") for each unit of the
10 National Forest System.  The LRMP must "provide for . . . watershed, wildlife, and
11 fish" and "provide for diversity of plant and animal communities." 16 U.S.C. §
12 1604(g)(3)(A) & (B).

13      24.    All projects within a national forest must comply with that forest's
14 LRMP.

15      25.    The LRMP for the San Bernardino National Forest ("San Bernardino
16 LRMP"), adopted in 2005, requires that surface water diversions and groundwater
17 extractions, including well and spring developments, may only be authorized upon
18 demonstration that the water extracted is in excess to the current and reasonably
19 foreseeable future needs of forest resources. The LRMP requires consideration of
20 beneficial uses, existing water rights, and the availability of other sources of water
21 as part of the application for water extraction.

22      26.    New projects in riparian areas require compliance with the "Five-Step
23 Project Screening Process for Riparian Conservation Areas" found in Appendix E
24 of the San Bernardino LRMP. That process limits activities allowed in riparian
25 conservation areas to those that maintain or improve long-term aquatic and riparian
26 ecosystem health, including quantity, quality, and timing of stream flows.

27

28 Complaint for Declaratory and Injunctive Relief                                    7
   5:15-cv-2098

27.     The San Bernardino National Forest LRMP incorporates by reference the Forest Service Handbook regarding Soil and Water Conservation Practices specific to the San Bernardino National Forest ("FSH").

28.     The FSH requires that existing activities and uses that occupy riparian conservation areas, as the West Strawberry Diversion Structure does, "should be evaluated for risks or impacts and mitigation during special use . . . re-issuance." Where mitigation is not effective, the FSH directs that the USFS must "reassess with the option to modify or eliminate the use, activity or occupancy when impacts are unacceptable."

29.     The SBNF Riparian Directives require that new special use permit applications for surface and ground water extraction and for transport of water across National Forest System lands be reviewed and assessed for potential impacts on aquatic and riparian ecosystems on or off the Forest. It is the obligation of permit applicants to demonstrate that proposed development will meet the riparian management objectives of the Forest.

30.     Prior to issuing or re-issuing special use permits for surface water diversions, the FSH requires demonstration of proof of water rights.

31.     Water diversion structures must be located outside of riparian conservation areas, which includes Strawberry Creek and its tributary and a 30 to 100 meter buffer, "where practicable."

**The 1976 Special Use Permit at Issue Here**

32.     On August 8, 1976, the USFS issued the Permit to Arrowhead Puritas Waters, Inc. allowing occupancy of "2.7 acres and/or 4.36 miles" for the purpose of "maintaining thereon water transmission lines, necessary service trails to maintain pipelines and water collection tunnels, horizontal wells, and spring boxes." These diversion structures were and are located in the -West Fork of Strawberry Creek, just east of Highway 18 in the Forest.

33.     The Permit was amended on August 2, 1978 to name new owner: "Arrowhead Mt. Spring Water Company." This is the name that remained on the Permit until its expiration.

34.     The Permit was again amended on June 24, 1981. At that time, an amendment was made to the termination clause of the Permit stating that the Permit, as amended, would "expire and become void on 8/2/1988."

35.     The Permit does not convey any water rights.

36.     The USFS has never confirmed that Nestlé has a valid water right to the water it diverts from the Strawberry Creek drainage.

37.     The Permit is nontransferable except by payment of a fee and the permission of the issuing officer or his successor. Upon such permission, the terms of the Permit require issuance of a new permit to the new owner.

38.     Although the USFS has acknowledged the expiration of the Permit, it has affirmatively allowed Nestlé's occupancy of the Forest to continue for nearly thirty years "until the permit can be re-issued, based on its continued adherence to the terms of that permit, and its payment of the required annual fee."

39.     As of May 12, 1987, a company called Beatrice Bottled Water Division, subsidiary of Beatrice Companies, Inc. claimed to be the holder of the Permit.

40.     In October 1991, an application to expand development of further water resources in the west fork of Strawberry Creek was denied based upon the negative impacts the USFS expected it to cause to riparian habitat.

41.     In 1992, the West Strawberry Diversion Improvements were maintained and upgraded with the consent of the USFS.

42.     In 1993, rock slides and flooding washed out 3,000 feet of pipe and the USFS granted authorization to repair the West Strawberry Diversion Improvements.

43.   In 1994 an application for a new well to be part of the West Strawberry Diversion Structures was denied, even though an existing well was proposed to be abandoned. The reasons given by the USFS for this denial included that the water extraction levels on the Forest were then believed to be at the maximum allowable.

44.   In 2002 Nestlé claimed to be the holder of the Permit.

45.   The USFS has never issued a special use permit to Nestlé for the West Strawberry Diversion Structure.

46.   In 2003 significant repairs were again made to the West Strawberry Diversion Structure, with the USFS's knowledge and consent, following fire-caused land sliding and flooding.

47.   In a letter to Nestlé dated April 7, 2015, the U.S. Department of Agriculture, Office of the General Counsel stated that: "In the interim, until the US Forest Service renders a decision on Nestlé's permit application, the current amended permit [the Permit] remains in full force and effect according to its terms, including those provisions requiring compliance with all relevant State and local laws, regulations and orders."  By this letter, the Forest Service has stated its intent to allow the unpermitted activities to continue indefinitely.

48.   The USFS annually accepts payment from Nestlé in exchange for permission to continue to allow the West Strawberry Diversion Structure to occupy Forest Land.

## V.  CLAIM FOR RELIEF

(Violation of FLPMA Special Use Permit Requirement,

43 U.S.C. §§ 1761-66; 36 C.F.R. 251.50-65)

49.   Each and every allegation set forth in the preceding paragraphs is incorporated herein by reference.

50.   Defendants have violated FLPMA, 43 U.S.C. §§ 1761-66, by allowing

Complaint for Declaratory and Injunctive Relief
5:15-cv-2098

10

1  Nestlé to continue operations and to modify and replace parts of the West

2  Strawberry Diversion Structure without a valid special use permit in effect.

3      51.    Nestlé's operation of the West Strawberry Diversion Structures must

4  be ceased by the USFS unless and until it issues a valid special use permit for those

5  operations.

6      52.    The Permit does not provide for renewal, and because the Permit has

7  expired, the USFS does not have the discretionary authority to renew the Permit.

8  36 C.F.R. § 251.64, 251.56(b)(1) (June 6, 1980).

9      53.    Nestlé has never been the valid holder of the Permit. 36 C.F.R.

10  § 251.59 (June 6, 1980).

11      54.    If the USFS decides to issue a new Special Use Permit to Nestlé, the

12  water diversions and operations currently taking place may need to cease or be

13  curtailed to protect Forest Resources pursuant to the requirements of the San

14  Bernardino LRMP.

15      55.    In making its determination whether or under what terms and

16  conditions a new special use permit might be issued to Nestlé, because significant

17  new information and new circumstances have occurred since the Permit was

18  issued, the USFS must conduct appropriate environmental analysis pursuant to the

19  National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA"), ensure

20  that Nestlé has valid and adequate rights to any diverted water, ensure consistency

21  with the San Bernardino LRMP, and comply with other laws. *See* 36 C.F.R. §

22  251.56 (June 6, 1980), San Bernardino LRMP.

23      56.    For these reasons, Defendants actions in allowing Nestlé's ongoing

24  operation, modification, and replacement of the West Strawberry Diversion

25  Structure without a valid special use permit are arbitrary, capricious, and otherwise

26  not in accordance with applicable law under the APA, 5 U.S.C. § 701 *et seq.*

27

28  Complaint for Declaratory and Injunctive Relief                    11
    5:15-cv-2098

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment providing the following relief:

(1)     Adjudge and declare that Defendants' action allowing operation of Nestlé's pipeline and water extraction facilities in the absence of a valid special use permit violates FLPMA and the APA;

(2) Issue an injunction requiring Defendants to prohibit operation or modification of the West Strawberry Diversion Structure unless and until a valid special use permit authorizing such action is in effect;

(3) Order Defendants to comply with FLPMA, NFMA, NEPA, and the APA in connection with Nestlé's diversion of water from the Strawberry Creek watershed; and

(5)     Grant Plaintiffs their fees, costs, expenses and disbursements, including reasonable attorneys' fees as provided by the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(6)     Grant Plaintiffs such additional and further relief as the Court deems just and proper.

Respectfully submitted,

October 13, 2015

/s/Lisa T. Belenky
Lisa T. Belenky (CA Bar No. 203225)
Justin Augustine (CA Bar No. 235561)
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612
Telephone: (510) 844-7107
Facsimile: (510) 844-7150
lbelenky@biologicaldiversity.org
jaugustine@biologicaldiversity.org

*Attorneys for Plaintiff*

Complaint for Declaratory and Injunctive Relief
5:15-cv-2098

12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Center for Biological Diversity*

/s/Rachel Doughty
Rachel Doughty (CA Bar No. 255904)
Greenfire Law
1202 Oregon Street
Berkeley, CA 94702
Telephone: (828) 424-2005
Facsimile: (510) 900-6262

/s/Matt Kenna
Matt Kenna (CO Bar No. 22159)
Public Interest Environmental Law
679 E. 2nd Ave., Suite 11B
Durango, CO  81301
(970) 385-6941
matt@kenna.net
Applicant *Pro Hac Vice*

*Attorneys for Plaintiffs Story of Stuff Project
and Courage Campaign Institute*

Complaint for Declaratory and Injunctive Relief
5:15-cv-2098

13