Robert M. Johnson (CA Bar No. 140935)
rjohnson@hunton.com
Alexandrea H. Young (CA Bar No. 233950)
ayoung@hunton.com
**HUNTON & WILLIAMS LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071
Telephone: (213) 532-2004
Facsimile: (213) 532-2020

Andrew J. Turner (*admitted pro hac vice*)
aturner@hunton.com
Karma B. Brown (*admitted pro hac vice*)
kbbrown@hunton.com
**HUNTON & WILLIAMS LLP**
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

*Attorneys for Amicus Curiae,*
*Nestlé Waters North America Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES FOREST SERVICE, *et al.*,<br><br>Federal Defendants. | CASE NO.: 5:15-CV-02098-JGB-DTB<br><br>[Hon. Jesus G. Bernal]<br><br>***AMICUS CURIAE* BRIEF OF NESTLÉ WATERS NORTH AMERICA INC.**<br><br>Complaint Filed: October 13, 2015<br>Trial Date: None Set |

**Table of Contents**

Table of Authorities ........................................................................................................ ii

I.   Introduction ........................................................................................................... 1

II.  The Extraordinary Remedy of Injunctive Relief Is Not Appropriate as a Matter of Law or Equity. .................................................................................... 2

    A.   Plaintiffs Fail to Prove They Will Suffer Irreparable Harm. ..................... 2

    B.   The Remedies Available at Law Are Adequate to Remedy Any Violation. .................................................................................................. 4

    C.   The Balance of Hardships Tips Sharply Against an Injunction ................. 4

        1.   NWNA's Water Rights Predate the SBNF. ..................................... 4

        2.   The Forest Service Must Provide NWNA Access to Its Water Rights, Subject Only to Reasonable Conditions. ................... 5

        3.   Any Restriction on NWNA's Access to Its Spring Waters Would Cause NWNA Substantial and Unwarranted Harm. ........... 6

    D.   An Injunction Is Not In the Public Interest. ............................................... 8

III. As a Matter of Law, No Form of Relief Is Available Because Plaintiffs Do Not Challenge Any Agency Action Subject to APA Review. ....................... 9

IV. To the Extent a Remedy Is Awarded, it Must be Narrowly Tailored to the Specific Agency Action Properly Before the Court. ........................................ 10

    A.   Even if the Forest Service Violated the APA, the Court May Only "Set Aside" the Challenged "Final Agency Action." .............................. 10

    B.   Remand Is the Only Appropriate Remedy, if Any, to the Extent the 1978 SUP Is Deemed to be Reviewable "Agency Action." .................... 11

V.  Conclusion ......................................................................................................... 12

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# Table of Authorities

## FEDERAL CASES

*Adams v. United States*, 3 F.3d 1254 (9th Cir. 1993) .................................................. 6

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470 (9th Cir. 1985) .................................................................................................. 3

*Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531 (1987) ........................................ 7

*Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920 (9th Cir. 2003) .................................... 8

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) .............................................................. 9

*Califano v. Yamasaki*, 442 U.S. 682 (1979) .............................................................. 10

*Cal. Cmtys. Against Toxics v. U.S. EPA*, 688 F.3d 989 (9th Cir. 2012) ................... 11

*Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988) ........................................................................................................... 3

*Citizens of the Ebey's Reserve for a Healthy, Safe & Peaceful Env't v. U.S. Dep't of the Navy*, 122 F. Supp. 3d 1068 (W.D. Wash. 2015) ............... 3

*GCB Commc'ns v. U.S. South Commc'ns*, 650 F.3d 1257 (9th Cir. 2011) ............... 4

*Golden State Bottling Co. v. Nat'l Labor Relations Bd.*, 414 U.S. 168 (1973) ................................................................................................................ 8

*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 725 F.3d 940 (9th Cir. 2013) ................................................................................ 9

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867 (9th Cir. 2014) ........................................................................................................... 2

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ................................... 2

*Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337 (9th Cir. 1995) ...................................... 11

*Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) ........................ 10

*NRDC v. EPA*, 859 F.2d 156 (D.C. Cir. 1988) ............................................................. 6

*Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs*, 817 F. Supp. 2d 1290
    (D. Or. 2011) ........................................................................................................ 3

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974) ............... 10

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) .......................................... 8

*The Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008) ................................... 7

*W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803 (9th Cir. 1980) ...................................... 11

*Zepeda v. U.S. Immigration & Naturalization Serv.*, 753 F.2d 719 (9th
    Cir. 1983) ............................................................................................................. 8

**STATE CASES**

*Del Rosa Mut. Water Co. v. D.J. Carpenter*, Case No. 31798 (San
    Bernardino Cty. Super. Ct., Oct. 19, 1931) ........................................................ 5

**FEDERAL STATUTES**

Proclamation No. 48, 27 Stat. 1068 (1893) ............................................................... 4

5 U.S.C. § 558(c) ................................................................................................. 6, 11

5 U.S.C. § 704 ........................................................................................................ 9, 10

5 U.S.C. § 706 .......................................................................................................... 10

**OTHER AUTHORITIES**

Clark, Kenton P., District Ranger, Cajon, Memorandum to Forest
    Supervisor, San Bernardino (Apr. 20, 1964) .................................................... 5

Clark, Kenton P., District Ranger, Cajon, Memorandum to Forest
    Supervisor, San Bernardino (Aug. 28, 1964) ................................................... 5

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Graham, Elliott L., District Ranger, U.S. Forest Service, San Bernardino National Forest, Letter of Authorization to Mr. Ramirez, Arrowhead Mountain Spring Water Company (July 2, 1993) .......................... 5

U.S. Dep't of Agric., Office of Inspector Gen., Audit Report 08601-55-SF, Forest Service: Administration of Special Use Program (June 2011) .......................................................................................................... 11

## I. Introduction

This brief describes the substantial harm that would be suffered by Nestlé Waters North America Inc. ("NWNA") if this Court awards any relief to Plaintiffs that causes the United States Forest Service ("Forest Service") to restrict NWNA's access to its water rights at the Arrowhead Springs. Any such restriction could cause millions of dollars in losses to NWNA and losses to other non-parties, irreparably harm NWNA's California operations, and affect hundreds of people employed by NWNA. NWNA files this *amicus curiae* brief to address whether any remedy is appropriate, and, in particular, to respond to this Court's April 20, 2016 Order (Doc. No. 33) regarding the propriety of injunctive relief – a matter that could transcend Plaintiffs' claims and, if not appropriately circumscribed, inappropriately harm NWNA and other third parties.

Plaintiffs challenge a Forest Service Special Use Permit ("SUP") that authorizes NWNA to use a five-foot-wide right-of-way across approximately 4.5 miles of the San Bernardino National Forest ("SBNF").[1] NWNA uses the right-of-way to transport spring water through a four-inch diameter pipeline across SBNF land to a collection station on privately owned land. Any Court order that limits NWNA's ability to rely on the right-of-way or to otherwise access its vested State water rights would materially and significantly impact NWNA's economic investments and business operations and, importantly, provide no demonstrated relief for Plaintiffs' alleged harm.

As the Federal Defendants correctly note, the statute of limitations on any challenge to the 1978 SUP expired long ago, and setting aside the Forest Service's more recent collections of fees would be an empty act. Injunctive relief is an "extraordinary" remedy appropriate only in rare circumstances, and subject to

---

[1] The current SUP (#7285) was issued by the Forest Service in 1978, and remains valid until the Forest Service issues a new SUP.

1

*Amicus Curiae* Brief of Nestlé Waters North America Inc.

important limits – including those that protect innocent third parties.[2]  Any injunctive relief that impairs NWNA's lawful exercise of its water rights would be contrary to law, exceed the bounds of this case, and cause undue and significant harm to NWNA and the public interest.  The proper focus moving forward should be completion of the SUP reissuance process, now well underway.

## II. The Extraordinary Remedy of Injunctive Relief Is Not Appropriate as a Matter of Law or Equity.

NWNA agrees with the Federal Defendants that Plaintiffs are not entitled to any relief, for all of the reasons the Federal Defendants have previously explained. NWNA focuses here on this Court's question concerning whether Plaintiffs would be entitled to injunctive relief, if some form of relief was appropriate.

The standard for injunctive relief is high.  An injunction is "a drastic and extraordinary remedy, which should not be granted as a matter of course" or if "a less drastic remedy," such as remand, is sufficient. *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 165 (2010).  A court may only issue a permanent injunction if Plaintiffs establish that (1) *they* have suffered or imminently will suffer an irreparable injury; (2) remedies available at law are inadequate; (3) considering the balance of hardships, a remedy in equity is warranted; and (4) the public interest would not be disserved, *id.* at 156-57, "taking into account the unique circumstances of each case." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.,* 762 F.3d 867, 880 (9th Cir. 2014).  Each of these factors is discussed below.

### A. Plaintiffs Fail to Prove They Will Suffer Irreparable Harm.

There is no evidence that an injunction, even if awarded, would remedy any injury personally suffered by Plaintiffs.  Nearly every allegation of harm made by Plaintiffs stems directly from NWNA's use of its vested senior water rights, and thus

---

[2] NWNA has not previously sought to participate in this litigation, instead deferring to the Federal Defendants in view of the Plaintiffs' focus on laws and procedures governing the Forest Service.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

is not caused by or fairly traceable to the SUP, or any Forest Service "action or inaction" subject to this Court's jurisdiction.³ Indeed, Plaintiffs have pointed to no scientific or ecological evidence that NWNA's ongoing exercise of its vested water rights is causing them irreparable harm, or that any change in NWNA's operations would change their members' alleged injuries in any discernible way. *See Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (plaintiff "must *demonstrate* immediate threatened injury"); *Am. Passage Media Corp. v. Cass Commc'ns, Inc.,* 750 F.2d 1470, 1473 (9th Cir. 1985) (conclusory affidavits insufficient to show irreparable harm); *Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs,* 817 F. Supp. 2d 1290, 1315 (D. Or. 2011) (declining injunction where plaintiffs failed to proffer evidence of environmental impacts, "much less clear evidence of irreparable harm").

Moreover, Plaintiffs did not seek injunctive relief, and their long delay in filing this suit is further evidence of no irreparable harm warranting the extraordinary remedy of an injunction. *See Citizens of the Ebey's Reserve for a Healthy, Safe & Peaceful Env't v. U.S. Dep't of the Navy*, 122 F. Supp. 3d 1068, 1083-84 (W.D. Wash. 2015) (delay in seeking injunction weighs against finding irreparable harm). NWNA and its predecessors-in-interest have collected water from these springs for over a hundred years. Neither Plaintiffs nor any other party has previously challenged the Forest Service's issuance of these SUPs, dispelling any notion that Plaintiffs are now

---

³ *See, e.g.,* Compl. for Declaratory & Injunctive Relief ¶ 4 (Doc. No. 1) (describing "efforts to protect and preserve the resources of the [SBNF] including water resources and water dependent resources which Plaintiffs allege are impacted by the ongoing use of the expired special use permit . . . ."); Decl. of Steve Loe ¶ 15 (Doc. No. 17-5) (alleging that "*taking of water from public lands* during drought" and "allowed degradation of Strawberry Creek *by excessive water diversion*" harms his enjoyment of the area) (emphases added); Decl. of Amanda Frye ¶ 10 (Doc. No. 17-6) ("The amount of water withdrawn from the Strawberry Creek headwater area *appears* to be impacting the Strawberry Canyon ecosystem, which harms my enjoyment of the area.") (emphasis added).

suffering an irreparable harm that could be the basis for injunctive relief, particularly since reissuance of the SUP is underway.

### B. The Remedies Available at Law Are Adequate to Remedy Any Violation.

To the extent the Court deems there to be an agency action subject to Administrative Procedure Act ("APA") review, the APA provides the specific relief afforded by Congress. Injunctive relief is not necessary.[4]

### C. The Balance of Hardships Tips Sharply Against an Injunction.

Based on the extensive harm NWNA would suffer from any injunction, compared to the lack of evidence of harm to the Plaintiffs, the balance of hardships tips sharply against an injunction. NWNA has invested millions of dollars in infrastructure to access and transport spring waters pursuant to the SUP. If the Court issues an order that causes the Forest Service to instruct NWNA to cease utilization of the right-of-way authorized by the SUP, NWNA would suffer significant and irreparable harm, which in turn would harm its employees, consumers, and the State of California through lost tax revenue.

#### 1. NWNA's Water Rights Predate the SBNF.

NWNA and its predecessors-in-interest have diverted and put to "beneficial use" (under California law) its rights to the spring waters in Strawberry Canyon since the late 1800s.[5] NWNA's senior appropriative right to these spring waters traces back over 150 years to a possessory claim recorded in 1865, a United States patent

---

[4] If the Court is asked to consider injunctive relief relating to the ongoing SUP reissuance (such as placing the Forest Service on a schedule, or requiring a certain type of review), it should reject such a request and avoid intruding into that ongoing Executive Branch process. *See GCB Commc'ns v. U.S. South Commc'ns*, 650 F.3d 1257, 1263-64 (9th Cir. 2011).

[5] This beneficial water use predates establishment of the SBNF. Proclamation No. 48, 27 Stat. 1068 (1893).

4

*Amicus Curiae* Brief of Nestlé Waters North America Inc.

recorded in 1882, and a State court decision upholding those rights in 1931.[6]  Today, the springs in Strawberry Canyon are within the SBNF, but the rights to the spring waters remain the property of NWNA with appurtenant rights of access.

In 1931, the California Superior Court concluded that NWNA's predecessor-in-interest's rights included "any and all of the water of all springs situated or obtainable in . . . 'Strawberry Creek and Canyon' and canyons lateral thereto." *Del Rosa,* at 10. The judgment recognized NWNA's right to "develop, by means of tunnels or . . . pipe line" all springs or water situated in that area and to "take and transport . . . out of [the] watershed for bottling or other purposes," based on the fact that these appropriative, pre-1914 rights had been put to continuous, beneficial use "*for more than fifty (50) years*." *Id.* at 6, 11 (emphasis added). The District Ranger concluded in 1964 that the 1931 *Del Rosa* decree binds the Forest Service because "water rights in California are applied for and held by applicable state law," and "the government has never held any water rights in this drainage . . . ."[7]

### 2. The Forest Service Must Provide NWNA Access to Its Water Rights, Subject Only to Reasonable Conditions.

The first SUP was issued in 1929. The current SUP (#7285) was issued by the Forest Service in 1978. Pending issuance of a new permit, SUP #7285 automatically remains in effect as a matter of law. NWNA and its predecessor-in-interest have paid the required fees and are in full compliance with all terms of the original permit.[8] As

---

[6] *Del Rosa Mut. Water Co. v. D.J. Carpenter*, Case No. 31798 (San Bernardino Cty. Super. Ct., Oct. 19, 1931) ("*Del Rosa*").

[7] Memorandum from Kenton P. Clark, District Ranger, Cajon, to Forest Supervisor, San Bernardino, ¶ 3 (Apr. 20, 1964). An August 28, 1964 memorandum from the District Ranger to the San Bernardino Forest Supervisor recognized that the SUP "confers no rights upon the permittee for the use of the water involved," because "[s]uch rights are obtained and retained under applicable State law." Memorandum from Kenton P. Clark, District Ranger, Cajon, to Forest Supervisor, San Bernardino, ¶ 20 (Aug. 28, 1964).

[8] *See* Letter of Authorization from Elliott L. Graham, District Ranger, U.S. Forest Service, San Bernardino National Forest, to Mr. Ramirez, Arrowhead Mountain

a result, the permit has continued, "not by affirmative agency action, but by operation of law" under section 558(c) of the APA. *NRDC v. EPA*, 859 F.2d 156, 214 (D.C. Cir. 1988) (per curiam); 5 U.S.C. § 558(c).

The Forest Service has no authority over appropriative water rights or collections under State law. NWNA's vested appropriative rights to the spring waters in Strawberry Canyon under State law give NWNA a clear, legal right of access across Forest Service land for the reasonable use and enjoyment of those rights, subject only to reasonable regulation by the Forest Service. *See Adams v. United States*, 3 F.3d 1254, 1259-60 (9th Cir. 1993). Where a person has a property right (fee simple or other property interest) surrounded by a federal reservation (such as the SBNF), the federal government is obligated to allow the property owner to freely access their property, subject to reasonable regulation of the means of access. *Id.* Accordingly, the Forest Service must provide access to NWNA's land-locked water rights for NWNA's full use and enjoyment of those rights, but may impose reasonable conditions on the means of access across SBNF land through the standard permit process.

### 3. Any Restriction on NWNA's Access to Its Spring Waters Would Cause NWNA Substantial and Unwarranted Harm.

Any relief that would cause the Forest Service to attempt to restrict NWNA's access to the springs would significantly harm NWNA. In reliance on the SUP and its reasonable expectation that it would have continued use of the right-of-way across the SBNF, NWNA (and its predecessors-in-interest) have invested millions of dollars in infrastructure to access and transport the spring waters, including building a pipeline that is approximately 23,000 feet long, water transmission lines, necessary service trails to maintain pipelines and water collection tunnels, horizontal wells, spring boxes, and collection facilities and related support facilities on adjacent private land.

---

Spring Water Company, 3 (July 2, 1993) (NWNA "has continued to pay the annual fee for [the SUP] and has upheld Forest Service permit regulations").

Decl. ¶ 17. When balancing equitable interests, economic harm must be considered. *See, e.g., Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987) (where asserted environmental injury was "not at all probable," economic interest was properly given more weight); *The Lands Council v. McNair*, 537 F.3d 981, 1005 (9th Cir. 2008) (balance of harms weighed against plaintiffs where a Forest Service project would "further the public's interest in aiding the struggling local economy and preventing job loss"). If NWNA were unable to collect spring water from the Arrowhead Springs, its infrastructure would lose substantial, if not all, value. Decl. ¶ 19.

In addition, if access to the springs is restricted, NWNA would face other significant financial harms, including losses in revenue and investments from operations outside Strawberry Canyon that rely on spring water collected from the Arrowhead Springs. *Id.* ¶ 21. NWNA collected approximately 36 million gallons of spring water from the Arrowhead Springs in 2015. *Id.* ¶ 22. Other than the right-of-way identified in the SUP, there are no currently available alternatives to transport this spring water across the SBNF. *Id.* ¶ 14. Any injunction preventing NWNA from using the right-of-way would result in NWNA's loss of access to Arrowhead Springs. *Id.* ¶ 15. This loss of access would result in a complete loss of spring water from the Arrowhead Springs, leading to significantly decreased sales and corresponding revenue, and a significant loss of sales channels. *Id.* ¶ 22.

Moreover, the spring water from Arrowhead Springs is unique in taste and mineral content, and is not a fungible product. *Id.* ¶ 23. Water from Arrowhead Springs may not be replaceable. *Id*. Critically, the Arrowhead Springs are the original eponymous source of water with which consumers associate the brand, and the loss of use of that water could have significant market impacts (including loss of brand loyalty and loss of significant accrued goodwill). *Id.* ¶ 28. And even if NWNA is able to locate replacement sources of water, each spring could take as long as seven years to permit and make operational, and millions of dollars to develop and entitle.

7

*Amicus Curiae* Brief of Nestlé Waters North America Inc.

*Id.* ¶ 24. Transporting water from these new spring sources would likely result in significantly higher expenses, as well as pollution. *Id.* ¶ 26.

In addition, even a temporary hiatus in spring water collection could result in significant damage to NWNA's infrastructure. *Id.* ¶ 20. Thus, the impacts on NWNA and its brand would far exceed the proportion of water that the brand sources from Arrowhead Springs.

Finally, NWNA employs approximately 1,200 persons in California in connection with Arrowhead® Mountain Spring Water, many of whom worked for Arrowhead long before it was owned by NWNA. *Id.* ¶ 29. If NWNA were to lose access to these springs and bottling operations were decreased, the result could be fewer jobs for dedicated, hard-working Californians, as well as lower State income tax revenues from those workers. *Id.* Based on the extent of harms that NWNA would suffer, compared to the lack of evidence of harm to the Plaintiffs, the balance of hardships tips heavily against an injunction.

### D. An Injunction Is Not In the Public Interest.

Plaintiffs cannot establish that an injunction is in the public interest. The public interest factor focuses on the impact of the injunction on non-parties, *Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 931 (9th Cir. 2003), and is especially important when the "impact of an injunction reaches beyond the parties." [9] *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). Here, an injunction would substantially injure non-parties, including NWNA, and intrude upon NWNA's reasonable and beneficial use of its vested water rights. Furthermore, NWNA's due process rights would be

---

[9] Traditional equity concerns require a court to tailor an injunction "to affect only those persons over which it has power." *Zepeda v. U.S. Immigration & Naturalization Serv.*, 753 F.2d 719, 727-28 (9th Cir. 1983); *Golden State Bottling Co. v. Nat'l Labor Relations Bd.*, 414 U.S. 168, 179-80 (1973) (purpose of Fed. R. Civ. P. 65(d) is to prevent injunctions that are "so broad as to make punishable the conduct of persons . . . whose rights have not been adjudged according to law") (internal quotation marks and citation omitted).

8

*Amicus Curiae* Brief of Nestlé Waters North America Inc.

violated should this Court issue injunctive relief against it, given that NWNA is not a party. It is plainly inequitable to punish NWNA, where it has fully and fairly complied with the law and is cooperating with the Forest Service's reissuance process, including voluntarily undertaking numerous scientific studies regarding SBNF resources.

Moreover, water rights are adjudicated by the State, and "[w]here a valid law speaks to the proper level of deference to a particular public interest, it controls." *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 725 F.3d 940, 946 (9th Cir. 2013).[10] Here, State law determines how water rights and usage are allocated, and such laws grant jurisdiction over appropriating surface state water rights *exclusively* to the California State Water Resources Control Board. This Court should defer to the State's authority over and adjudication of water rights, and avoid intruding upon State authority.

There is simply no valid basis to issue an injunction under these circumstances. The harms would far outweigh the unproven allegations of harm cited by Plaintiff that fall outside this Court's purview.

**III. As a Matter of Law, No Form of Relief Is Available Because Plaintiffs Do Not Challenge Any Agency Action Subject to APA Review.**

NWNA joins the Federal Defendants' position that CBD simply does not make a proper APA claim. The APA limits those "[a]ctions reviewable" in court to "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704. The SUP constitutes final agency action, but the six year statute of limitations to challenge

---

[10] It serves the public interest where federal courts rely on equity powers to "exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943) (internal quotation marks omitted).

the SUP has long expired, and Plaintiffs fail to identify any other final or required Forest Service action within the past six years.[11]

## IV. To the Extent a Remedy Is Awarded, it Must be Narrowly Tailored to the Specific Agency Action Properly Before the Court.

If this Court nonetheless finds for Plaintiffs on any claim, its relief must be narrowly tailored. A court should always craft a remedy that is "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). The scope of the remedy, therefore, should be limited to the injury that forms the basis for standing, thus insuring that "the framing of relief [is] no broader than required by the precise facts to which the court's ruling would be applied." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974).

### A. Even if the Forest Service Violated the APA, the Court May Only "Set Aside" the Challenged "Final Agency Action."

The only potential "final agency action" Plaintiffs challenge is the 2013 "bill for collection." This was not an agency action within the meaning of the APA as explained by the Federal Defendants. But even if the 2013 "bill for collection" was deemed a "final agency action," and its issuance was found to be arbitrary and capricious or otherwise contrary to law, that bill is the only action the Court may set aside under the APA. *See* 5 U.S.C. §§ 704, 706. Setting aside the 2013 bill, as

---

[11] To the extent CBD attempts to challenge inaction by the Forest Service on the 1987 application for SUP renewal, the Supreme Court addressed the limits of such APA review in *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004). There plaintiffs alleged that "BLM failed to take action . . . that it was required to take," and sought injunctive relief for BLM's failure to act. *Id.* at 61. The Court noted that "[f]ailures to act are sometimes remediable under the APA," but the APA "insist[s] upon an 'agency action'" and "failure to act" is properly understood as a failure to take a discrete, required agency action. *Id.* at 61-62. The most CBD could seek in a proper APA suit would be an order compelling the Forest Service to do what it has already started – the SUP reissuance process.

*Amicus Curiae* Brief of Nestlé Waters North America Inc.

Federal Defendants explain, will not terminate the 1978 SUP under 5 U.S.C. § 558(c), much less remedy Plaintiffs' stated injuries.

### B. Remand Is the Only Appropriate Remedy, if Any, to the Extent the 1978 SUP Is Deemed to be Reviewable "Agency Action."

If, despite the applicable statute of limitations, the 1978 SUP was deemed to be reviewable "agency action," and found to violate the APA, the appropriate remedy would be limited to remand rather than vacatur.

Whether to vacate an action under the APA "is controlled by principles of equity." *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995). A court must consider the "competing claims of injury" that would result from vacatur, the "good faith or innocence" of those relying on the agency action, "the time that has elapsed" since the agency action, and the "expectations" of those relying on the agency action. *Id.*; *see also Cal. Cmtys. Against Toxics v. U.S. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (per curiam) (decision to vacate "depends on how serious the agency's errors are and the disruptive consequences of an interim change that may itself be changed") (internal quotations omitted).

Vacatur here would cause extraordinary disruption to an innocent non-party, NWNA, because NWNA is not the cause of any delay by the Forest Service, has remained in full compliance with the SUP, and relies on the SUP to access the right-of-way and utilize its vested state water rights. *W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 813 (9th Cir. 1980) (declining to vacate air pollution rule because it could thwart California's air pollution control process).[12] The long-ago expiration of the statute of

---

[12] Vacatur could harm other innocent permittees by calling into question the validity of thousands of other administratively continued SUPs the Forest Service has yet to process. *See* U.S. Dep't of Agric., Office of Inspector Gen., Audit Report 08601-55-SF, Forest Service: Administration of Special Use Program 2 (June 2011) ("more than 3,500 special use authorizations have expired but are still being treated as active. . . . because FS did not have effective procedures for dealing with expiring authorizations, and also lacked the staff to address the backlog"). Thus, an unintended consequence of vacatur would be significant havoc within the Forest Service permitting system.

limitations for challenging the 1978 SUP confirms NWNA's reasonable, good faith expectation that the SUP would remain in effect until the Forest Service issued a new SUP. Moreover, the Forest Service is processing the SUP reissuance, and the proper action is to allow that process to continue unfettered.

## V. Conclusion

For the reasons set forth above, this Court should deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Cross Motion for Summary Judgment. In the event the Court grants Plaintiffs' Motion, relief should be limited to remand.

Dated:  May 12, 2016                             **HUNTON & WILLIAMS LLP**

By:  /s/  Robert M. Johnson
Robert M. Johnson (CBN 140935)
rjohnson@hunton.com
Alexandrea H. Young (CBN 233950)
ayoung@hunton.com
**HUNTON & WILLIAMS LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071
Telephone: (213) 532-2004
Facsimile: (213) 532-2020

Andrew J. Turner (*admitted pro hac vice*)
aturner@hunton.com
Karma B. Brown (*admitted pro hac vice*)
kbbrown@hunton.com
**HUNTON & WILLIAMS LLP**
2200 Pennsylvania Avenue, NW
Washington, D.C. 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

*Attorneys for Amicus Curiae,
Nestlé Waters North America Inc.*