Robert M. Johnson (CA Bar No. 140935)
rjohnson@hunton.com
Alexandrea H. Young (CA Bar No. 233950)
ayoung@hunton.com
**HUNTON & WILLIAMS LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071
Telephone: (213) 532-2004
Facsimile: (213) 532-2020

Andrew J. Turner (*admitted pro hac vice*)
aturner@hunton.com
Karma B. Brown (*admitted pro hac vice*)
kbbrown@hunton.com
**HUNTON & WILLIAMS LLP**
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

*Attorneys for Amicus Curiae,*
*Nestlé Waters North America Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES FOREST SERVICE, *et al.*,<br><br>Federal Defendants. | CASE NO.: 5:15-CV-02098-JGB-DTB<br><br>[Hon. Jesus G. Bernal]<br><br>**DECLARATION OF LARRY LAWRENCE IN SUPPORT OF *AMICUS CURIAE* BRIEF OF NESTLÉ WATERS NORTH AMERICA INC.**<br><br>Complaint Filed: October 13, 2015<br>Trial Date: None Set |

# DECLARATION OF LARRY LAWRENCE

I, Larry Lawrence, declare:

## Qualifications

1. I have personal knowledge of the facts set forth herein except as to those matters stated upon information and belief, and, as to such matters, I am informed and believe that they are true.

2. Since May 13, 2003, I have been employed by Nestlé Waters North America Inc. ("NWNA"). I currently serve as NWNA's Natural Resource Manager with primary responsibility for the Arrowhead® brand in the southwestern United States.

3. As Natural Resource Manager, I am familiar with NWNA's spring resources, water infrastructure, operations, and business throughout the States of California (including, without limitation, with respect to NWNA's operations in Strawberry Canyon and in connection therewith), Arizona, Nevada, New Mexico, and Hawaii. My responsibilities include sustainable development of new water sources, siting of new facilities, sustainable management of existing water resources, development and management of monitoring and control systems, sustainable water sourcing for each facility, public outreach, and community relations. These responsibilities include locating, developing, and permitting spring sources. I am also familiar with how any potential interruption in NWNA's operations would affect NWNA personnel, capital, and other resources, as well as NWNA's ability to provide bottled spring water to consumers.

## Overview

4. I make this declaration in support of the proposed *amicus curiae* brief filed by Movant NWNA in the above-captioned case.

5. The purpose of this declaration is to describe the significant impacts and harms that NWNA would face if this Court were to impose any form of equitable or

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

injunctive relief that affected NWNA's operations.

6. As explained below, any Court order that limits NWNA's ability to rely on the right-of-way identified by Special Use Permit No. 7285, or that otherwise limits NWNA's access to its vested State water rights, would significantly, materially, adversely, and irreparably harm NWNA's economic investments, business operations, and employees, and would significantly, materially, adversely, and irreparably harm consumers and the State of California.

## Background

7. I am informed and believe that the U.S. Forest Service ("USFS") issued Special Use Permit No. 7285 (the "SUP") to one of NWNA's predecessors-in-interest in 1978. I am informed and believe that the SUP authorizes NWNA's use of an approximately 4.5-mile long, five-foot wide right-of-way (the "ROW") that crosses land comprising a portion of the San Bernardino National Forest (the "SBNF").

8. NWNA has engineered, constructed, and installed—and owns—a four-inch diameter, approximately 23,000-foot long pipeline (the "Pipeline"). The Pipeline carries spring water from certain springs located in the upper reaches of Strawberry Canyon in the SBNF and commonly known as the "Arrowhead Springs" (the "Arrowhead Springs") down Strawberry Canyon, along the ROW identified in the SUP, to a collection point located on privately owned land (the "Load Station").

9. The Arrowhead Springs are comprised of a series of spring sources generally designated as spring sources 1, 1A, 2, 3, 7, 7A, 7B, 7C, 8, 10, 11, and 12. Attached hereto as Exhibit A is a photograph that I personally took on May 1, 2016 showing spring sources 1, 1A, 2, 3, 7, 7A, 7B, 7C, 8, 10, 11, and 12. Attached hereto as Exhibit B is a photograph that I personally took on May 1, 2016 showing spring source 2. Attached hereto as Exhibit C is a photograph that I personally took on May 1, 2016 showing spring sources 7, 7A, 7B, and 7C. Attached hereto as Exhibit D is a photograph that I personally took on May 1, 2016 showing spring sources 10, 11, and

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

12. Attached hereto as <u>Exhibit E</u> is a photograph that I personally took on April 7, 2016 showing spring sources 10, 11, and 12.

10. I am informed and believe that NWNA collects spring water from the Arrowhead Springs pursuant to certain water rights owned by NWNA (the "<u>Arrowhead Water Rights</u>"). I am informed and believe that the Arrowhead Water Rights grant rights to the use of the spring water originating from the Arrowhead Springs. I am informed and believe that the Arrowhead Water Rights can be traced to a possessory claim recorded in 1865, and to a subsequent patent from the United States recorded in 1882. I am informed and believe that the only known dispute regarding the ownership of the Arrowhead Water Rights was resolved in 1931, in *Del Rosa Mut. Water Co. v. D.J. Carpenter*, Case No. 31798 (San Bernardino Cty. Super. Ct., Oct. 19, 1931). I am informed and believe that through a series of corporate transactions and conveyances of record, NWNA is the sole current owner of the Arrowhead Water Rights. I am informed and believe that the Arrowhead Springs have been producing commercial quantities of spring water for more than 121 years.

11. I am informed and believe that in 1987, one of NWNA's predecessors-in-interest (and the then-current holder of the SUP) timely submitted a request to the USFS for renewal of the SUP in accordance with the terms of the SUP. I am informed and believe that from 1987 through the date hereof, NWNA and its predecessors-in-interest (as applicable) have continued to pay the annual permit fee and have fully complied with the terms and conditions of the SUP. In a letter to NWNA dated April 7, 2015, the USFS stated that "until the Forest Service renders a decision on NWNA's application, the current amended permit [the SUP] remains in full force and effect, according to its terms. . . ." I am informed and believe that the USFS sent similar correspondence to NWNA's predecessor-in-interest (and then-current holder of the SUP) in 1993. As of the date hereof, the SUP reissuance process remains ongoing.

3

Declaration of Larry Lawrence ISO Motion of Nestlé Waters North America Inc.
For Leave to File an *Amicus Curiae* Brief

## NWNA Would Be Significantly and Irreparably Harmed by Any Order Granting Injunctive Relief

### Description of Harm Based On Publicly Available Information

12.  I am informed and believe that NWNA considers much of its proprietary economic and financial information to be a trade secret and confidential. I am informed and believe that NWNA would customarily ask for a protective order before publicly discussing a trade secret or other confidential information. I am informed and believe that should this Court need more information to make a determination in this matter, NWNA would be willing to provide such information subject to a protective order. Nevertheless, there are a number of publicly available facts that demonstrate the significant harm that NWNA would experience in the event that NWNA were deprived of access to, and volumes of spring water from, the Arrowhead Springs.

### Harm Would Be Significant and Irreparable: Loss of Arrowhead Springs

13.  The ROW identified in the SUP provides the only currently available means of transporting spring water from the Arrowhead Springs across SBNF land to the Load Station (which is located on private property). The Arrowhead Springs are located entirely within the SBNF, and I am informed and believe that NWNA does not have the legal right to maintain its Pipeline on any route over the SBNF other than the ROW identified in the SUP.

14.  There are no currently available alternatives to the Pipeline. The Arrowhead Springs are located in steep terrain that is not accessed by any currently-existing road, and the construction of a new road would be extremely costly and would require significant infrastructure construction in the SBNF. In addition, water collection via helicopter or other vehicle is not economically viable.

15.  Any injunction preventing NWNA from using the ROW identified in the SUP would result in NWNA's loss of access to the Arrowhead Springs, because

Declaration of Larry Lawrence ISO Motion of Nestlé Waters North America Inc.
For Leave to File an *Amicus Curiae* Brief

NWNA would have no other means to access the Arrowhead Springs. Thus, NWNA would be unable to collect any quantities of the spring water to which I am informed and believe it is entitled under the Arrowhead Water Rights.

16. Moreover, because spring water from the Arrowhead Springs is unique in quality (including, without limitation, mineral content) and taste, the loss of this spring water would cause irreparable harm to NWNA.

**Harm Would Be Significant: Loss of Investment in Infrastructure**

17. In reliance on the SUP and on its understanding that it would have continued access to the ROW across the SBNF, NWNA (and its predecessors-in-interest) have invested millions of dollars in building, constructing, installing, maintaining and repairing infrastructure to access and transport the spring water from the Arrowhead Springs to the Load Station (the "Infrastructure"). The Infrastructure is located in part on the ROW and in part on private property adjacent to the SBNF. The Infrastructure includes, without limitation: (i) the Pipeline; (ii) water collection tunnels, horizontal wells, and spring boxes; (iii) necessary service foot trails; (iv) a tank facility that includes two 90,000-gallon storage tanks; (v) the Load Station; and (vi) certain associated easements and rights.

18. Since the reissuance process for the SUP was announced publicly in early 2015, NWNA has received multiple threats to our business and our employees. Because we take our responsibility to our customers and our employees very seriously, we have upgraded our security systems for the Infrastructure and have retained security personnel to protect the Infrastructure. NWNA has invested very significant sums of money in these upgrades and personnel.

19. The Infrastructure has no purpose other than the collection and transportation of spring water. If NWNA were unable to collect spring water from the Arrowhead Springs, then NWNA's Infrastructure (and NWNA's significant investment therein) would lose all of its value.

20. Even if NWNA's ability to collect spring water from the Arrowhead Springs were only temporarily restricted, an interruption in water flow through the Infrastructure (including, without limitation, the Pipeline), could irreparably damage the Infrastructure (including, without limitation, the Pipeline), which was not designed to be entirely without water flow. At a minimum, an interruption in water flow would necessitate significant sanitizing of, and the performance of significant operational checks on, the Pipeline and other Infrastructure before NWNA could resume operating the Infrastructure.

21. In addition to the loss of its investment in the Infrastructure as described above, NWNA has made other significant investments in its operations (outside Strawberry Canyon) in reliance on the spring water collected from the Arrowhead Springs. The loss of spring water from the Arrowhead Springs would interfere with these investments and would result in significant economic harm to NWNA.

**Harm Would Be Significant: Loss of Spring Water/Replacement Costs**

22. NWNA collected approximately 36 million gallons of spring water from the Arrowhead Springs during 2015. That volume was reported to the California State Water Resources Control Board pursuant to the reporting procedures that (I am informed and believe) are established under California law. Loss of that volume would mean that NWNA would suffer a significantly decreased supply of Arrowhead® Mountain Spring Water. In addition, if NWNA were unable to meet demand and stock its product in certain locations due to this decreased supply, then NWNA could suffer a significant loss of sales and of sales channels as a result.

23. Because spring water from the Arrowhead Springs is unique in quality and taste, and because spring water is very minimally processed, not every spring source will meet NWNA's exacting taste and quality criteria for bottling as Arrowhead® Mountain Spring Water. Accordingly, it could take a significant amount

6

Declaration of Larry Lawrence ISO Motion of Nestlé Waters North America Inc.
For Leave to File an *Amicus Curiae* Brief

1 of time to replace this lost source (the Arrowhead Springs). In fact, it is possible that this lost source would never be replaced.

24. Each new spring source that NWNA determines meets its exacting taste and quality standards typically takes 3-7 years to permit and make operational (for example, I am informed and believe that the California Department of Public Health requires each operational spring source to have a corresponding Private Water Source Operator License). In my experience, it generally takes millions of dollars to locate, permit, and make operational a single new spring source. Furthermore, a single new spring source may not generate an amount of spring water sufficient to replace the lost volume from the Arrowhead Springs. If multiple new spring sources are needed to replace this lost volume, then these permitting and infrastructure costs would be multiplied.

25. If NWNA is deprived of all spring water from the Arrowhead Springs, then, until this lost volume from the Arrowhead Springs is replaced, NWNA will have less spring water to bottle and bring to market. In the fiercely competitive bottled spring water market, continuous and uninterrupted satisfaction of its customers' product demands is critical to NWNA's Arrowhead® Mountain Spring Water business. If NWNA's Arrowhead® Mountain Spring Water products are not readily available on retailers' shelves, then other brands of water may be stocked in their place, and NWNA's customers will switch to other brands.

**Harm Would Be Significant: Increased Operating Costs/Pollution**

26. As set forth above, in order to replace any lost volumes from the Arrowhead Springs, NWNA would need to purchase spring water from other spring sources. Most of these spring sources would be located farther from NWNA bottling plants than the Arrowhead Springs. Some of these spring sources could even be located in other states. The replacement spring water from these spring sources would then be trucked longer distances to the bottling plants. This longer journey would

7

significantly increase NWNA's logistics, fuel, and labor costs. In addition, this longer journey would increase pollution in the form of increased greenhouse gas emissions, increased tire degradation, and increased traffic.

### Harm Would Be Significant: Eponymous Source/Goodwill

27. NWNA bottles and distributes eleven well-known bottled spring water brands in the U.S., including Arrowhead® Mountain Spring Water. The Arrowhead Springs were the original source for the current Arrowhead® brand. The continued sustainable bottling of water from the Arrowhead Springs is critical to consumer identity and brand loyalty.

28. The Arrowhead Springs are the eponymous source for Arrowhead® Mountain Spring Water, and the Arrowhead Springs are the symbol upon which the Arrowhead® Mountain Spring Water brand was originally built and continues 121 years later. There is significant goodwill associated with the Arrowhead Springs that has accrued to NWNA's benefit over time. NWNA's loss of its ability to collect spring water from the Arrowhead Springs would result in the loss of this accrued goodwill.

### Harm Would Be Significant: Loss of Jobs/Tax Revenues

29. NWNA currently employs approximately 1,200 persons in California who work in connection with Arrowhead® Mountain Spring Water. If NWNA were unable to collect spring water from the Arrowhead Springs each year, then NWNA would need to consider adjusting its workforce to account for decreased bottling operations from reduced supply. This workforce adjustment could result in fewer available careers for hard-working Californians, particularly in Southern California, where the Arrowhead Springs play a major supply role. This workforce adjustment could also result in lower State income tax revenues from those workers.

Declaration of Larry Lawrence ISO Motion of Nestlé Waters North America Inc.
For Leave to File an *Amicus Curiae* Brief

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 6, 2016 in Ontario, CA.

By: _____
Larry Lawrence
Natural Resource Manager,
Nestlé Waters North America Inc.

5772 Jurupa Street
Ontario, California 91761



Exhibit A:  Looking north at the slopes of Strawberry Canyon below Strawberry Peak.  Spring sources 1, 1A, 2, 3 and 8 are all located near the upper left portion of the photograph.  Spring sources 7, 7A, 7B, and 7C are located in the upper middle of the photograph on the steep slope in the background.  Spring sources 10, 11, and 12 are located near the middle of the photograph.  Photograph taken on May 1, 2016.



<u>Exhibit B</u>:  Looking east.  Spring source 2 is located left of center in the photograph, surrounded by blooming chaparral.  Photograph taken on May 1, 2016.



<u>Exhibit C</u>:  Looking east.  Spring sources 7, 7A, 7B, and 7C are located lower right of center in the photograph, surrounded by bay trees and blooming chaparral.  Photograph taken on May 1, 2016.



<u>Exhibit D</u>:  Looking west along fault.  Spring sources 10, 11, and 12 are located right of center in the photograph.  Photograph taken on May 1, 2016.


Exhibit E: Looking south. Spring sources 10, 11, and 12 are located right of center in the photograph. Photograph taken on April 7, 2016.