Lisa T. Belenky (CA Bar No. 203225)
lbelenky@biologicaldiversity.org
Justin Augustine (CA Bar No. 235561)
jaugustine@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Telephone: (510) 844-7107
Facsimile: (510) 844-7150


*Attorneys for Plaintiff*
*Center for Biological Diversity*

Rachel S. Doughty (CA Bar No. 255904)
rdoughty@greenfirelaw.com
GREENFIRE LAW
1202 Oregon Street
Berkeley, CA 94702
Telephone: (828) 424-2005


Matt Kenna (CO Bar No. 22159)
matt@kenna.net
Public Interest Environmental Law
679 E. 2nd Ave., Suite 11B
Durango, CO  81301
Telephone: (970) 385-6941
*Pro Hac Vice*


Douglas P. Carstens (CA Bar No. 193439)
dpc@cbcearthlaw.com
CHATTEN-BROWN & CARSTENS
2200 Pacific Coast Highway, Ste. 318
Hermosa Beach, CA 90254
Telephone: (310) 798-2400
Facsimile: (310) 798-2402


*Attorneys for Plaintiffs Story of Stuff*
*and Courage Campaign*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY *et al.*, | ) | Case No. 5:15−cv−02098−JGB−DTB |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **PLAINTIFFS' OPPOSITION TO** |
| vs. | ) | **NESTLE'S *AMICUS CURIAE* BRIEF** |
| | ) | |
| UNITED STATES FOREST SERVICE *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ 2

INTRODUCTION ................................................................................ 4

I.   Nestle's Factual Claims of Harms Are Inappropriate for an Amicus Brief ................................................................................................ 4

II.  Nestle's Claims of Harm are either Unsubstantiated or Contradicted by Available Information ...................................................... 5

III. Access to Nestle's Asserted Water Rights Do Not Militate Against Issuing an Injunction ................................................................... 7

  A. Water rights are subject to Forest Service regulation and imposition of reasonable conditions including limits to protect Forest resources .......................................................... 7

  B. Water rights are subject to limitation to protect the public trust and beneficial uses. ..................................................... 10

IV. Other Issues Raised by the Amicus Brief Should Not Be Accepted .. 14

CONCLUSION .................................................................................. 16

1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adams v. United States*, 3 F.3d 1254 (9th Cir. 1993) .................................. 9

*Artichoke Joe's Cal. Grand Casino v. Norton,* 353 F.3d 712 (9th Cir. 2003) ...... 4, 7

*County of Okanogan v. Nat'l Marine Fisheries Serv.*, 347 F.3d 1081 (9th Cir. 2003) ........................................................................................ 8, 9

*County of Okanogan v. Nat'l Marine Fisheries Serv.*, 541 U.S. 1029 (2004) .......... 8

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197 (9th Cir. 1980) .................................................................................... 7

*Neighbors of Cuddy Mountain v. U. S. Forest Serv.*, 137 F.3d 1372 (9th Cir. 1998) ........................................................................................ 14

*Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062 (7th Cir. 1997) ....... 4

*Sampson v. Murray*, 415 U.S. 61 (1974) ..................................................... 7

*Santiago v. Rumsfeld,* 425 F.3d 549 (9th Cir. 2005) ..................................... 5

*Smith v. Pinion*, 2013 WL 3895035 (M.D. N.C. July 29, 2013) ....................... 4

*Strasser v. Doorley*, 432 F.2d 567 (1st Cir. 1970) ....................................... 4

*Trout Unltd. v. U.S.D.A.*, 320 F. Supp. 2d 1090 (D. Colo. 2004) ..................... 9

*United States v. Michigan*, 940 F.2d 143 (6th Cir. 1991) ............................... 4

*United States v. New Mexico*, 438 U.S. 696 (1978) ...................................... 11

*Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7 (2008) ..................... 5

## FEDERAL STATUTES

43 U.S.C. § 661 ................................................................................... 9

## FEDERAL REGULATIONS

36 C.F.R. § 219.15 ............................................................................... 9

# CALIFORNIA CASES

*City of Barstow v. Mojave Water Agency*, 23 Cal. 4th 1224 (2000)...................... 12

*Del Rosa Mut. Water Co. v. D.J. Carpenter*, Case No. 31798 (San Bernardino Cty.
    Super. Ct., Oct. 19, 1931) .............................................................. 12

*Envtl. Law Found., et al. v. State Water Res. Control Bd.,* Case No. 34-2010-
    80000583, (Cal. Superior Ct. Sac. July 15, 2014) ........................................ 10

*In re Water of Hallett Creek Stream Sys.*, 44 Cal. 3d 448 (1988) ......................... 11

*Light v. State Water Res. Control Bd.*, 226 Cal.App.4th 1463 (2014)................... 11

# CALIFORNIA CONSTITUTIONAL PROVISIONS

Cal. Const., Art. X, § 2 .................................................................. 11

Cal. Const., Art. X, § 5 .................................................................. 10

# CALIFORNIA STATUTES

Cal. Fish & Game Code § 5937 .......................................................... 11

Cal. Water Code § 102 ................................................................... 10

Cal. Water Code § 104 ................................................................... 10

Cal. Water Code § 1200 ................................................................. 12

Cal. Water Code § 1243 ................................................................. 11

Cal. Water Code § 2501 ................................................................. 12

Cal. Water Code § 2526 ................................................................. 12

Cal. Water Code § 2527 ................................................................. 12

# OTHER AUTHORITIES

United States Forest Service Soil and Water Conservation Practices Handbook
    2509.22. ............................................................................ 9

**INTRODUCTION**

Plaintiffs now respond to the *amicus curiae* brief of Nestle Waters North America, Inc. (Dkt. 48). Nestle's brief consists primarily of factual claims of harm, such as that an injunction would harm Nestle's infrastructure, and that it would result in layoffs to its employees. These are not appropriate subject matter for an *amicus* party to raise. However even if considered, in every instance these alleged facts are either unsubstantiated or contradicted by available information, and should not be accepted by the Court. Likewise, Nestle's arguments that it has access rights that may not be interrupted are contradicted by the law. Finally, Nestle's cursory legal arguments add nothing to the arguments presented by the Defendants, which have been adequately addressed in the existing briefing.

**I.    Nestle's Factual Claims of Harms Are Inappropriate for an Amicus Brief**

"The term '*amicus curiae*' means friend of the court, not friend of a party." *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997), citing *United States v. Michigan*, 940 F.2d 143, 164-65 (6th Cir. 1991). Further, "an amicus who argues facts should rarely be welcomed." *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970); *Smith v. Pinion*, 2013 WL 3895035 at *1 (M.D. N.C. July 29, 2013) ("[T]he Court questions the propriety of permitting a non-party to present evidence. [] Though the scope and extent of amicus participation is within the discretion of the Court, the Committee is not a named party or a real party in interest to this litigation, and it should not be accorded the right to present evidence or otherwise participate in an adversarial fashion.") (citing *United States v. Michigan*, 940 F.2d at 166).

As the Court has already noted, "'[i]n the absence of exceptional circumstances, . . . [a court] does not address issues raised only in an amicus brief.'" Order of May 11, 2016 (Dkt. 47) at 2 (quoting *Artichoke Joe's Cal. Grand Casino v. Norton,* 353 F.3d 712, 719 n. 10 (9th Cir. 2003)); *see also Santiago v.*

*Rumsfeld,* 425 F.3d 549, 552 n.1 (9th Cir. 2005) ("We follow our general rule in declining to address these arguments [raised by *amicus curiae*, but] not raised by the parties."). Accordingly, the factual assertions of harm by Nestle should not be considered. To the extent the Court does consider them, as will be explained they are either unsubstantiated or contradicted by all available information.

## II.   Nestle's Claims of Harm are either Unsubstantiated or Contradicted by Available Information

To the extent the Court does consider Nestle's claims of harm, the asserted potential harm to Nestle and its employees is not supported.  First, Nestle claims that "If NWNA were to lose access to these springs and bottling operations were decreased, the result *could* be fewer jobs for dedicated, hard-working Californians, as well as lower State income tax revenues from those workers." Amicus Brf. (Dkt. 48) at 8, citing Dec. of Larry Lawrence (Dkt. 48-1) ¶ 29 ("This workforce adjustment *could* result in fewer available careers for hard-working Californians ….") (emphases added).  These speculative assertions of potential layoffs are insufficient to establish harm.

As the Forest Service points out, a party "must establish a likelihood, rather than a mere possibility, of substantial and immediate injury" when an injunction is being considered." FS Injunction Brief at 3 (Dkt. 44), citing *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  Statements about what "could" occur hardly suffice. And in fact, layoffs of employees would be highly unlikely given that Nestle has multiple sources for its Arrowhead brand, multiple other brands,[1] and many other facilities in the State in addition to the two bottling plants

---

[1] *See* http://www.nestle-watersna.com/en/bottled-water-brands (other brands include Nestle Pure Life purified water, Deer Park Spring Water, Ice Mountain Spring, and others) (last accessed May 19, 2016).

1  in Ontario, California and Cabazon, California.[2] Even if the Court were to consider

2  the Arrowhead "Mountain Spring Water" brand alone, Nestle's own website and

3  bottled water report state that the "brand's sources span from the United States to

4  Canada."[3] The fact that Nestle has multiple sources for its Arrowhead-labeled

5  water also undermines its assertion that "the spring water from Arrowhead Springs

6  is unique in taste and mineral content, and is not a fungible product." *See* Amicus

7  Brf. (Dkt. 48) at 7, citing Lawrence Dec. (Dkt. 48-1) ¶ 23. And spring water is not

8  the only bottled water under the Arrowhead-label which also includes distilled

9  water and drinking water from well or municipal supply sources.[4] Nestle has failed

10 to show any likelihood of harm.

11      Likewise, the assertion that "even a temporary hiatus in spring water

12 collection could result in significant damage to NWNA's infrastructure" is without

13 support. *See* Amicus Brf. (Dkt. 48) at 8, citing Lawrence Dec. (Dkt. 48-1) ¶ 20.

14 Mr. Lawrence asserts that "an interruption in water flow through the Infrastructure

15 (including, without limitation, the Pipeline), could irreparably damage the

16 Infrastructure (including, without limitation, the Pipeline), which was not designed

17 to be entirely without water flow. At a minimum, an interruption in water flow

18 would necessitate significant sanitizing of, and the performance of significant

19

20 [2] Ian James, The Desert Sun, March 8, 2015, Bottling Water Without Scrutiny",
21 map legend (available at http://www.desertsun.com/story/news/2015/03/05/
22 bottling-water-california-drought/24389417/ ) ("Nestle Waters North America,
   which sells brands including Arrowhead and Nestle Pure Life, has five plants (in
23 Sacramento, Livermore, Los Angeles, Cabazon and Ontario") (last accessed May
24 19, 2016).

25 [3] 2015 Bottled Water Quality Report for Arrowhead brand bottled water ("2015
26 Arrowhead Report") (available at https://www.nestle-watersna.com/asset-
   library/Documents/AR_ENG.pdf) at 3.

27

28 [4] *Id.*

**PLAINTIFFS' OPPOSITION TO NESTLE'S *AMICUS CURIAE* BRIEF** 5:15−cv−02098−JGB−DTB       6

operational checks on, the Pipeline and other Infrastructure before NWNA could resume operating the Infrastructure." There is no assertion how damage might actually occur from simply suspending flow, or why the need to sanitize the line harms Nestle—presumably sanitization needs to be performed periodically anyway.

Even if Nestle might suffer some economic harm, it has not shown a likelihood of any harm significant enough to overcome the public interest in setting aside or enjoining Nestle's illegal license. *See* Pl. Inj. Brf. (Dkt. 43) at 14, citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974) and *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980).

## III.   Access to Nestle's Asserted Water Rights Do Not Militate Against Issuing an Injunction

The idea that the Court should not grant the requested vacatur or injunction and that the Forest Service must grant Nestle continuous access to water regardless of the circumstances should be rejected. *See* Amicus Brf. (Dkt. 48) at 5-6.  As an initial point, this is an issue "beyond those advanced by the parties in this case," and so should not be considered. Order of May 11, 2016 (Dkt. 47) at 2 (citing *Artichoke Joe's*, 353 F.3d at 719 n.10). The Court need not make a finding regarding Nestle's claimed water rights because even if Nestle has some water rights, the use of the Forest is subject to regulation and control as is the use of water in California.

### A.   Water rights are subject to Forest Service regulation and imposition of reasonable conditions including limits to protect Forest resources.

Even if the Court determines it is appropriate to consider Nestle's claims of water rights, the Forest Service "may impose reasonable conditions on the means of access across SBNF land through the standard permit process." Amicus Brf. (Dkt. 48) at 6. This is consistent with Plaintiffs request, for vacatur and injunctive

relief, which, if granted, would allow the Forest Service to impose reasonable conditions through the standard permit process, rather than unregulated use continuing based on an expired special use permit.

As the Court of Appeals has stated, the Forest Service and the courts have the power to restrict access to vested water rights to make sure that they are being exercised and accessed appropriately. In *County of Okanogan v. National Marine Fisheries Service*, the appellants argued that the Forest Service did not have the authority to condition the use of the rights-of-way in a national forest on the maintenance of instream flows because such restrictions denied them their vested water rights under state law. 347 F.3d 1081, 1085 (9th Cir. 2003), *cert. denied*, 541 U.S. 1029 (2004). The Court of Appeals rejected that argument, finding that the imposition of such restrictions in the right-of-way permits was within the authority of the Forest Service:

> The Federal Land Policy and Management Act of 1976 (FLPMA) authorizes the Secretaries of the Interior and Agriculture to "grant, issue, or renew rights-of-way over, [upon, . . . or through such lands for reservoirs, canals, ditches, . . . and other facilities and systems for the impoundment, storage, transportation, or distribution of water."] 43 U.S.C. § 1761(a)(1).  Such rights-of-way "shall contain . . . terms and conditions which will . . . minimize damage to . . . fish and wildlife habitat and otherwise protect the environment" and that will "require compliance with applicable . . . water quality standards established by or pursuant to applicable Federal or State law." Id. § 1765(a).  In addition, the National Forest Management Act requires the Forest Service to specify guidelines for land management plans that "provide for . . . watershed, wildlife, and fish" and "provide for diversity of plant and animal communities." 16 U.S.C. § 1604(g)(3)(A) & (B). The Organic Administration Act, 16 U.S.C. § 475, provides that "no national forest shall be established, except to improve and protect the forest within the boundaries, or for the purpose of securing favorable conditions of water flows . . . ." The Multiple Use Sustained-Yield Act of 1960 (MUSYA), 16 U.S.C. § 528, provides that "it is the policy of the Congress that the national

> forests are established and shall be administered for outdoor
> recreation, range, timber, watershed, and wildlife and fish purposes."
> These statutes, in our view, give the Forest Service authority to
> maintain certain levels of flow in the rivers and streams within the
> boundaries of the Okanogan National Forest to protect endangered
> fish species.

*Id. See also, id.* ("[T]he Forest Service ha[s] the authority to restrict the use of the
rights-of-way to protect the endangered fish."); *Trout Unltd. v. U.S.D.A.*, 320 F.
Supp. 2d 1090, 1103-04 (D. Colo. 2004) ("FLPMA itself does not authorize the
Supervisor's consideration of the interests of private facility owners as weighed
against environmental interests such as protection of fish and wildlife habitat.
FLPMA *requires* all land-use authorizations to contain terms and conditions which
will protect resources and the environment.") (emphasis in original). Further,
reviewing Nestle's water rights claims is required as part of the new permitting
process.[5]

Nestle also argues that it is entitled to access the water rights it claims via a
right of way grant. Amicus Brf. (Dkt. 48) at 6. However, in order to secure a water
right-of-way on that basis (43 U.S.C. § 661), rather than a Special Use Permit,
Nestle has the burden to prove vested water rights under California law (not simply
assert them). *Adams v. United States*, 3 F.3d 1254, 1260 (9th Cir. 1993) (affirming
district court finding in quiet title action and explaining that "[t]o secure a water
right-of-way under 43 U.S.C. § 661, the Adamses must have shown, by a
preponderance of the evidence, that their water rights vested according to local

---

[5] The Forest Service Soil and Water Conservation Practices Handbook,
incorporated into the San Bernardino National Forest Plan, requires the Forest to
"[e]nsure that proof of water right is established prior to issuing or re-issuing
Special Use Permits." United States Forest Service Soil and Water Conservation
Practices Handbook 2509.22, at 3.31. Doughty Declaration (5th) ("Doughty Decl.
(5th)"), at _____ (Exh. 32); 36 C.F.R. § 219.15(d) ("Every project and activity must
be consistent with the applicable plan components … .").

1   custom or law."). And, even if such right-of-way were found by a court, "[t]he
2   Forest Service still has the authority to reasonably regulate the [] easement." *Id.*
3   Additionally, as discussed in Section B below, the State of California has
4   regulatory authority as well.

5       Accordingly, Nestle's suggestion that the Court cannot set aside its illegal
6   license while the Forest Service considers a new permit and considers the
7   important environmental interests is without foundation.

8   **B.    Water rights are subject to limitation to protect the public trust**
9   **       and beneficial uses.**

10      While the Court need not determine the extent of Nestle's claimed water
11  rights for the foregoing reasons, Nestle's descriptions of its water rights is
12  incomplete and ignores California law.

13      All water in California is held in trust for the people and subject to
14  regulation for beneficial use. Cal. Water Code § 102 ("All water within the State is
15  the property of the people of the State, but the right to the use of water may be
16  acquired by appropriation in the manner provided by law."); Cal. Const., Art. X, §
17  5 ("The use of all water now appropriated, or that may hereafter be appropriated,
18  for sale, rental, or distribution, is hereby declared to be a public use, and subject to
19  the regulation and control of the State, in the manner to be prescribed by law.");
20  Cal. Water Code § 104 ("It is hereby declared that the people of the State have a
21  paramount interest in the use of all the water of the State and that the State shall
22  determine what water of the State, surface and underground, can be converted to
23  public use or controlled for public protection.").[6] Water may be put to beneficial

24  _____

25  [6] *See also Envtl. Law Found., et al. v. State Water Res. Control Bd.,* Case No. 34-
26  2010-80000583, (Cal. Superior Ct. Sac. July 15, 2014) (Doughty Decl. (5th) at p.
    33 et seq., Exh. 41) (concluding that the public trust protects navigable waters from
27  "harm caused by groundwater extraction" and counties are required to consider the
28  public trust when issuing well drilling permits).

uses but cannot be wasted or put to any unreasonable use. Cal. Const., Art. X, § 2. Instream use of water for fish and wildlife is a beneficial use (Cal. Water Code § 1243) and the California legislature has imposed limits on water use to support natural resources (*see, e.g.,* Cal. Fish & Game Code § 5937). The State's authority can be exercised to prevent unreasonable uses of water that could harm the environment and adversely affect public trust resources. *Light v. State Water Res. Control Bd.*, 226 Cal.App.4th 1463, 1488 (2014) (holding that Water Board's broad authority to regulate includes riparian users and pre-1914 appropriators). Even if Nestle has surface water rights accrued prior to the establishment of the San Bernardino National Forest[7] (*see* Amicus Brf. (Dkt. 48) at 4-5), any such senior rights would be limited to the amount used as of 1893, before the reservation, and would be subject to regulation. *See, e.g., id*.

In California, rights to surface water include both appropriative rights (which Nestle claims here) and riparian rights of adjacent landowners (including the U.S. Forest Service) whether or not the landowner has exercised those rights in the past. As the California Supreme Court explained: "the riparian water rights of the United States on its reserved national forest lands in California are as fully immune from defeasance as the riparian rights of a private owner." *In re Water of Hallett Creek*, 44 Cal. 3d at 470 (holding that State Board should consider superior riparian rights of the U.S. as a landowner of a National Forest in an adjudication where the United States "claimed a riparian right to the use of the waters of Hallett Creek for wildlife enhancement purposes") (emphasis omitted). In *Del Rosa Mut. Water Co. v. D.J. Carpenter*, Case No. 31798 (San Bernardino Cty. Super. Ct.,

---

[7] *See United States v. New Mexico*, 438 U.S. 696, 706-08 (1978) (reservation of water in national forests is for the primary purposes of improving and protecting the forest (including protection from destruction by fire) and securing favorable conditions of water flows); *In re Water of Hallett Creek Stream Sys.*, 44 Cal. 3d 448, 454-55, 457 (1988).

Oct. 19, 1931) (Doughty Decl. (5th) at p. 49 (Exh. 42), the case that Nestle relies on, the only rights at issue were private rights of the parties to surface water which were settled and stipulated between them. The U.S. was not joined as a party in that case nor is there any evidence the U.S. or any other potentially affected party was notified of the proceedings such that it could have protected its rights. As such, it was not a complete adjudication of the water rights in the stream system. *See* Cal. Water Code §§ 2501 *et seq.*, § 2526, § 2527 (providing a process for statutory adjudication by State Water Resources Control Board of water rights in stream system, including publication and mailing of required notice); *City of Barstow v. Mojave Water Agency*, 23 Cal. 4th 1224, 1235-38 (2000) (explaining lengthy process of adjudication and development of physical solution and settlement with process for non-settling parties to be heard).

Further, under California law, groundwater use is treated differently than surface water or subterranean streams flowing in definite channels (Cal. Water Code § 1200), with overlying owners possessing the right to use groundwater. Rights in groundwater can be obtained through appropriation, however the use of groundwater is generally limited to the overlying lands unless there is surplus water in the basin. *See City of Barstow,* 23 Cal. 4th at 1241 (2000) ("Proper overlying use, however, is paramount and the rights of an appropriator, being limited to the amount of the surplus [], must yield to that of the overlying owner in the event of a shortage"). Thus to the extent Nestle may claim any appropriative rights with respect to groundwater, its uses of such water are not superior to any riparian rights claimed by the Forest Service for environmental purposes.

The issue of groundwater is relevant here because the record shows that Nestle is not currently diverting surface water directly from springs but appears to be taking groundwater before it reaches the springs or the creek. Thus, Nestle's claims regarding its rights to take spring water from the Strawberry Creek watershed and the priority of those rights may be dubious in light of *Light*, *supra*,

and the State's constitutional provisions relating to the unreasonable use of water. *See* NES000263 (listing wells and recordation numbers); Doughty Decl. (5th) at p. 14 (Exh. 33)("Verification of the State water rights database (2015) confirms that the water taken by Arrowhead Springs is reported as groundwater. Surface rights, which are appropriated, have not been identified in the area."); Ex. 34 ("In conversations with Nestle, they also state that they are pumping groundwater and report there [sic] usage to the State"); Exh. 35 ("The Forest, Regional Office and OGC all concurred in the late 90's that the so called 'spring' water was really groundwater"). The record also shows that the Forest Service has raised questions about the basis and amount of the claimed water rights multiple times and asked the company for documentation which was not provided. NES000255-56, 257, 258, 280. *See also* NES000193 (Forest Service hydrologist explaining in 1985 that California "has separate and distinctly different procedures and requirements for the rights of surface waters and groundwaters" and that "Arrowhead-Puritas has no standing as a riparian or overlying owner."); Doughty Decl. (5th) at p. 17 (Exh. 35) ("Original water rights appear to be based on removal of surface water at the base of the mountain on or near the Campus Crusade Property. [. . .] Not sure if the original diversion and rights were for Waterman Canyon, West Twin, East Twin, Coldwater, or Strawberry, a combination or what."). In any event, well registration with the State and any reporting of water use to the state or a county does not of itself confer a right to pump groundwater, and Nestle, at a minimum, must demonstrate that it is pumping as an overlying owner or as a permittee with a currently valid permit. Nestle has not shown this Court that it has a right to use and export groundwater nor explained how or whether it believes its claimed surface water rights relate to this use of groundwater.

In sum, the water rights alleged by Nestle do not preclude the Court granting an injunction in this litigation and vacating the illegal license to use Forest resources. Whatever water rights Nestle may have are subject to regulation under

State law, almost certainly subordinate to the Forest Service's rights as a riparian and overlying landowner, and the Forest Service can impose terms and conditions limiting the use of such water rights to prevent any unreasonable uses, as determined by the Forest Service, as part of a special use permit or a right-of-way.

**IV.   Other Issues Raised by the Amicus Brief Should Not Be Accepted**

Nestle raises several other issues, but they are not well taken. Regarding the only legal issues actually raised by the Forest Service (and so the only issues appropriate for an *amicus* brief), Nestle only makes cursory arguments regarding final agency action and the statute of limitations that add nothing to the Forest Service's arguments. *See* Amicus Brf. (Dkt. 48) at 9-10. On these issues, Plaintiffs stand on their existing briefing.[8]

Nestle does additionally argue that Plaintiffs' alleged delay in bringing this suit, and its own "innocent" status weigh against granting Plaintiffs any relief. Amicus Brf. (Dkt. 48) at 3, 9, 11. However, Plaintiffs have already explained, "the California drought has brought the challenged situation to a head, making it far worse than in previous years, and Plaintiffs should not be punished for hoping that the Forest Service would do its job in issuing a new special use permit for the wells and pipeline that would likely curtail, or perhaps stop, Nestle's high level of water extractions from the Strawberry Creek watershed." Pl. Inj. Br. (Dkt. 43) at 12-13 n.5 (citing *Neighbors of Cuddy Mountain v. U. S. Forest Serv.*, 137 F.3d 1372, 1381-82 (9th Cir. 1998)).

And far from being an innocent bystander, the current situation is as much Nestle's fault as it is the Forest Service's. As explained in Plaintiff's Reply Brief, (Dkt. 29) at 17, Nestle has never submitted adequate information to allow the

---

[8] *See also* (in addition to Plaintiffs' prior briefing) Doughty Decl. (5th) at p. 32 (Exh. 40) (discussing treatment of holdover permittees as tenants as will if they pay an annual bill and trespassers if they do not.)

Forest Service to prepare a new special use permit, despite repeated notification and warnings of curtailment if it did not. *See* Pl. Opp. Brief (Dkt. 29) at 16-18 (discussing long history of failure by Nestle to submit an adequate application); Doughty Decl. (3rd) at 5-6 (Exh. 25)(listing information required from Nestle to consider new diversion permit). More recently, but well over a year ago, on February 27, 2015, Nestle was notified by the Forest Service that "[c]ertain information must be provided by Nestle in order for the reissuance process to move forward." Doughty Decl. (2nd) (Dkt. 25-4) at 6-7(Exh. 22); *see also*, Doughty Decl. (3rd) (Dkt. 29-2) at 5-6 (Exh. 25). Subsequently the Forest Service has on multiple occasions warned Nestle, in response to Nestle's failures to provide the needed application and factual information, that these failures could result in curtailment of Nestle's diversion of water from public lands. Doughty Decl. (5th) at p. 19 (Exh. 36) ("if we do not receive the TIN by COB today the Forest Service will be considering curtailing Nestle's activities"), at p. 20 (Exh. 37) ("This is our final attempt to obtain necessary, complete and accurate documentation pertaining to your permitted use on the San Bernardino National Forest . . . Please provide the information by 7/29/2015. We will not entertain further submittal of piecemeal cursory documentation. If the documentation is not provided by this time, the Forest will consider curtailing Nestle's activities on the Forest until the re-issuance process is completed and a decision rendered regarding permit re-issuance."), at p. 22 (Exh. 38)("[T]he information provided the Forest thus far . . . does not represent a clear and complete understanding of [Nestle's] permitted improvements and uses which is a necessity for permit re-issuance and a threshold issue. I would like to draw attention to the fact that we have requested this from you on several previous occasions since we agreed to take up permit re-issuance at Nestle's request including meetings with you on February 27, March 16, April 28 and July 1; and in correspondence dated February 27, March 18, May 11 and June 18. . . . Please provide this information by 8/10/2015. . . . If Nestle wants to re-authorize their use

1  of National Forest System lands, this level of detailed documentation must be

2  received. If the information continues to be unavailable, the Forest will consider

3  curtailing Nestle's activities on the Forest until the required information is

4  available and the re-issuance process can proceed."). *See also*, *Id.* at p. 24 (Exh.

5  39)("we haven't been successful in getting them to come to the table").

6       Next, the photographs provided by Nestle purporting to show a healthy

7  Strawberry Creek should not be accepted.  As the Plaintiffs have explained with

8  full substantiation, the current drought combined with Nestle's water extraction is

9  causing serious problems for Strawberry Creek. Pl. Inj. Brf. (Dkt. 43) at 6-11. And

10  while is easy to cherry-pick photographs of healthy-looking segments of

11  Strawberry Creek, that cannot overcome this well-supported narrative evidence,

12  and the long-term impacts of groundwater drawdown cannot necessarily be seen in

13  photographs.

14       Finally, Nestle argues that other third parties who hold expired permits on

15  the Forest could be affected by a ruling in Plaintiffs' favor in this case. Amicus

16  Brf. (Dkt. 48) at 11 n.12. However, while a ruling in Plaintiffs' favor might clarify

17  that as a legal matter that some other permits have expired and need renewal, that

18  of course does not mean that activities covered by them would be enjoined by an

19  order of this Court limited to Nestle's diversion, the only activity subject to this

20  suit. If a new suit were brought regarding those other activities, the court would

21  need to separately address whether any relief was appropriate as to such activities

22  based on the specific facts of the case. No other third parties would be harmed by

23  vacatur or an injunction in this case.

### CONCLUSION

25       For these reasons, Nestle's amicus brief does not show that vacatur or an

26  injunction should be denied.

27                  Respectfully submitted,

28

PLAINTIFFS' OPPOSITION TO NESTLE'S *AMICUS CURIAE* BRIEF 5:15−cv−02098−JGB−DTB    16

May 19, 2016                              /s/Matt Kenna
                                         Matt Kenna (CO Bar No. 22159)
                                         Public Interest Environmental Law
                                         679 E. 2nd Ave., Suite 11B
                                         Durango, CO  81301
                                         (970) 385-6941
                                         matt@kenna.net
                                         *Pro Hac Vice*


                                         /s/Rachel Doughty
                                         Rachel Doughty (CA Bar No. 255904)
                                         Greenfire Law
                                         1202 Oregon Street
                                         Berkeley, CA 94702
                                         Telephone: (828) 424-2005


                                         /s/ Douglas P. Carstens
                                         Douglas P. Carstens
                                         (CA Bar No. 193439)
                                         dpc@cbcearthlaw.com
                                         CHATTEN-BROWN & CARSTENS
                                         2200 Pacific Coast Highway, Ste. 318
                                         Hermosa Beach, CA 90254
                                         Telephone: (310) 798-2400
                                         Facsimile: (310) 798-2402


                                         *Attorneys for Plaintiffs Story of Stuff Project*
                                         *and Courage Campaign Institute*


                                         /s/ Lisa T. Belenky
                                         Lisa T. Belenky (CA Bar No. 203225)
                                         Justin Augustine (CA Bar No. 235561)
                                         Center for Biological Diversity
                                         1212 Broadway, Suite 800
                                         Oakland, CA 94612
                                         Telephone: (510) 844-7107
                                         Facsimile: (510) 844-7150
                                         lbelenky@biologicaldiversity.org

jaugustine@biologicaldiversity.org

*Attorneys for Plaintiff*
*Center for Biological Diversity*

All other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

/s/Rachel S. Doughty
Rachel S. Doughty