**HUNTON & WILLIAMS LLP**
Robert M. Johnson (SBN 140935)
rjohnson@hunton.com
Jason J. Kim (SBN 221476)
kimj@hunton.com
550 South Hope Street, Suite 2000
Los Angeles, California 90071
Telephone: (213) 532-2004
Facsimile: (213) 532-2020

**HUNTON & WILLIAMS LLP**
Andrew J. Turner (Admitted *Pro Hac Vice*)
aturner@hunton.com
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

Attorneys for *Amicus Curiae*
NESTLÉ WATERS NORTH AMERICA INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES FOREST SERVICE, *et al.*,<br><br>Federal Defendants. | CASE NO.: 5:15-CV-02098-JGB-DTB<br><br>[Hon. Jesus G. Bernal]<br><br>**[PROPOSED] SUPPLEMENTAL *AMICUS CURIAE* BRIEF OF NESTLÉ WATERS NORTH AMERICA INC. IN RESPONSE TO ORDER DIRECTING SUPPLEMENTAL BRIEFS**<br><br>Date: July 25, 2016<br>Time: 9:00 a.m.<br>Ctrm: 1<br><br>Complaint Filed: October 13, 2015 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................... 1

II. ARGUMENT .............................................................................................. 2

    A. The 1987 Letter Was a Timely and Sufficient Renewal Application. ...................................................................................... 2

    B. Interpreting the Regulations to Add Requirements to NWNA's Renewal Application Long After Submission Would Violate NWNA's Right to Fair Notice. ................................................... 6

    C. If the Court Determines the Additional Requirements in 36 C.F.R. § 251.54(e)(1)-(4) (1987) Apply, Then They Should Only Apply Prospectively. ............................................................................... 7

III. CONCLUSION ......................................................................................... 9

i

[PROPOSED] SUPPLEMENTAL *AMICUS CURIAE* BRIEF OF
NESTLÉ WATERS NORTH AMERICA INC.

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*FCC v. Fox Television Stations, Inc.*,
    132 S. Ct. 2307 (2012) ........................................................................................ 6

*Freedom From Religion Foundation, Inc. v. Weber*,
    628 Fed.Appx. 952 (9th Cir. 2015) ..................................................................... 3

*Harper v. Virginia Department of Taxation*,
    509 U.S. 86 (1993) .............................................................................................. 7

*Nunez-Reyes v. Holder*,
    646 F.3d 684 (9th Cir. 2011) .............................................................................. 7

*Pan-Atl. S.S. Corp. v. Atl. Coast Line R.R. Co.*,
    353 U.S. 436 (1957) ............................................................................................ 8

*Sierra Club v. U.S. Forest Serv.*,
    No. 15-CV-10154, 2015 WL 5729091 (E.D. Mich. Sept. 30, 2015) ................... 5

*United States v. Hoechst Celanese Corp.*,
    964 F. Supp. 967 (D.S.C. 1996) .......................................................................... 6

*Yamada v. Snipes*,
    786 F.3d 1182 (9th Cir. 2015) ............................................................................ 6

**STATUTES**

5 U.S.C. § 558 ............................................................................................... 2, 3, 8, 9

**OTHER AUTHORITIES**

36 C.F.R. § 251.54 ..................................................................................................... 7

36 C.F.R. § 251.64 ................................................................................................ 2, 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On June 13, 2016, this Court ordered supplemental briefing to address two questions regarding the regulations of the United States Forest Service (the "Forest Service") governing special use permits ("SUPs"):

> 1. Are applications to renew special use permits governed exclusively by 36 C.F.R. § 251.64(b) (1987) or does 36 C.F.R. §§ 251.54(e)(1)-(4) (1987) impose additional requirements for submission of renewal applications?
>
> 2. Assuming applications to renew special use permits are governed exclusively by 36 C.F.R. § 251.64(b) (1987), was Schiller's May 2, 1987 letter a "timely and sufficient application" for renewal which triggered 5 U.S.C. § 558(c)?

Order Directing Suppl. Brs. regarding Pls.' & Defs.' Mots. For Summ. J. at 2 (Doc. No. 52).

As the Federal Defendants will explain, the answers to these questions are straightforward. Section 251.64 of the Forest Service's regulations is the only provision that addresses renewals, and it only requires that holders of SUPs provide notice of intent to renew to shift responsibility to the Forest Service to determine whether, and under what conditions, a renewed permit should be issued. The SUP (as amended, "SUP #7285") issued to the predecessor of Nestlé Waters North America Inc. ("NWNA") expressly states that notice is all that is required to trigger the renewal process, but also imposes a deadline—one year before SUP #7285's expiration. Neither Section 251.64 nor SUP #7285 incorporates, either implicitly or

[PROPOSED] SUPPLEMENTAL *AMICUS CURIAE* BRIEF OF
NESTLÉ WATERS NORTH AMERICA INC.

explicitly, Section 251.54(e), which only applies to new applications. Thus, when the predecessor of NWNA notified the Forest Service in May 1987 (NES000208)[1] (the "1987 Letter") that it intended to renew SUP #7285, it made "timely and sufficient application for a renewal" within the meaning of 5 U.S.C. § 558(c) and the SUP.

In the nearly 30 years since NWNA's predecessor requested renewal, the Forest Service has taken the consistent and unwavering position that the 1987 Letter was sufficient notice to start the renewal process. If the Forest Service believed its regulations required more, it never said so. NWNA has invested millions of dollars in infrastructure to access and transport spring water in reliance on the Forest Service's representations. *Amicus Curiae* Br. of NWNA at 6-7 (Doc. No. 48) ("NWNA *Amicus Br.*"). Should the Forest Service unilaterally change its position post hoc, either independently or pursuant to an order from this Court, NWNA's investments could be placed in jeopardy unfairly, through no fault of NWNA. The fair notice doctrine—a prominent component of administrative law—precludes such an outcome.

In sum, the Court should find that the 1987 Letter was a "timely and sufficient" application for renewal within the meaning of 5 U.S.C. § 558(c) and SUP #7285, and allow the Forest Service to focus its attention on completing the reissuance process for SUP #7285, now well underway.

## II. ARGUMENT

### A. The 1987 Letter Was a Timely and Sufficient Renewal Application.

Forest Service regulations and SUP #7285 itself state clearly that, at most, holders of SUPs need only timely notify the Forest Service to make a sufficient application for renewal. Section 251.64 of the Forest Service regulations, titled "Renewals," makes this plain. There is no language, express or implied, in 36 C.F.R. § 251.64(a) that suggests that another regulation modifies or expands the renewal

---

[1] Citations to Administrative Record materials are to the unique Bates number for each Administrative Record document lodged with the Court. *See* Index of the Administrative Record for the Nestlé Permit (Doc. No. 30-1).

2

submission requirements. *See Freedom From Religion Found., Inc. v. Weber*, 628 F. App'x 952, 956 (9th Cir. 2015) ("[36 C.F.R. § 251.54(e)(1)(iv)] does not apply to renewals of *existing* special use permits …. [T]he renewal of existing permits must only comply with the neutral requirements of 36 C.F.R. § 251.64.") (Smith, J., concurring). Where the SUP expressly calls for renewal, renewal is automatic, so long as the operator has complied with the existing authorization. 36 C.F.R. § 251.64(a) (1987). Where the SUP does not expressly call for renewal, the operator must notify the "authorized officer," who then has discretion to grant or deny the request. *Id.* § 251.64(b). Under the regulations, then, all that the operator needs to do to make a sufficient request for renewal and to shift responsibility to the agency is to provide "notice" to the agency.

The express provisions of SUP #7285 confirm as much. SUP #7285 provides that the "permit shall, subject to annual revalidation by the Forest Service and payment of fees by the permittee, expire and become void on 8/2/1988, but a new permit . . . may be granted provided the permittee . . . *shall have notified the Forest Supervisor not less than 1 year prior to said date that such new permit is desired*." NES000176 (emphasis added). NWNA's predecessor satisfied this condition on May 12, 1987, more than one year before SUP #7285's stated expiration date of August 2, 1988, when it notified the Forest Service (via the 1987 Letter) of its intent to renew the SUP: "It is our intention, with this letter, to request the Forestry [sic] Service to renew this permit and send to my attention any documents, forms and instructions needed for this purpose." NES000208. Under the plain text of the regulations and the express terms of SUP #7285, this was all NWNA's predecessor needed to do to renew. At that point, NWNA's predecessor was authorized to continue operation as allowed by SUP #7285 while the Forest Service considered the request for renewal. 5 U.S.C. § 558(c) (providing that as long as a "licensee has made timely and sufficient application for a renewal . . . *in accordance with agency rules*, a

[PROPOSED] SUPPLEMENTAL *AMICUS CURIAE* BRIEF OF
NESTLÉ WATERS NORTH AMERICA INC.

license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency") (emphasis added).

The Forest Service agreed. In 1988, the Forest Service confirmed in a telephone conversation with Ron Lansing, production manager for NWNA's predecessor, that SUP #7285 would remain in place while the Forest Service considered the renewal request. NES000217. Mr. Lansing described that conversation in a follow-up letter a week later:

> It is my understanding from our conversation that because of a heavy workload it is almost assured that you will not get the new permit completed by August and possibly not until late in the year. It is also my understanding from our conversation that all this will mean is the present permit, conditions, and fee structures will remain in place until the new permit is issued. It will not in any way jeopardize our ability to conduct "business and [sic] usual" in reguards [sic] to our springs and pipeline.

NES000217. Then, in 1993, in confirming that certain maintenance activities were covered by SUP #7285, the Forest Service stated: "You have recently requested additional information on your Special Use Permit and permit billing procedures. . . . As [NWNA's predecessor] has continued to pay the annual fee for this permit and has upheld Forest Service permit regulations, *the permit is deemed valid until a new Special Use Permit is reissued.*" NES000303 (emphasis added). Since 1987, NWNA and its predecessors-in-interest have continued to pay the annual permit fee and have fully complied with the terms and conditions of SUP #7285.

4

[PROPOSED] SUPPLEMENTAL *AMICUS CURIAE* BRIEF OF
NESTLÉ WATERS NORTH AMERICA INC.

The United States District Court for the Eastern District of Michigan recently confirmed the simplicity of the Forest Service's regulations. *See Sierra Club v. U.S. Forest Serv.*, No. 15-CV-10154, 2015 WL 5729091 (E.D. Mich. Sept. 30, 2015). At issue there was an 8.1 mile section of oil pipeline owned by Enbridge Energy ("Enbridge") and located on National Forest land in Michigan. The Sierra Club alleged that the Forest Service had failed to conduct a proper environmental analysis when it had reissued a 30-year SUP, and that the permit had expired prior to the reissuance. The court concluded that Enbridge had made timely and sufficient application for renewal by notifying the Forest Service of its intent to renew: "[T]he 1992 Permit was set to expire on December 31, 2012. On September 26, 2012 Enbridge requested renewal of its special use authorization for the [] Pipeline. *This satisfied Enbridge's duty of 'timely and sufficient application* for a renewal or a new license.' Therefore, under . . . the [Administrative Procedure Act], the 2015 Permit was a proper administrative continuance of Enbridge's prior authorization." *Id.* at *10 (internal citations omitted) (emphasis added). In fact, no court has held anything to the contrary.

Enbridge's request for renewal was an email to the Forest Service detailing the names of individuals and contact information that would be added to the new permit. The email concludes with, "If you need anything else please contact me." Administrative Record FS0190-0196, *Sierra Club v. U.S. Forest Serv.*, No. 15-CV-10154, 2015 WL 5729091 (E.D. Mich. Sept. 30, 2015) (Doc. No. 14-16). The court held that this email alone satisfied Section 558(c)'s requirements for a "timely and sufficient" application for renewal. That decision is consonant with both the Forest Service's and NWNA's understanding here that NWNA's more substantive renewal request (the 1987 Letter) was a timely and sufficient application for renewal.

## B. Interpreting the Regulations to Add Requirements to NWNA's Renewal Application Long After Submission Would Violate NWNA's Right to Fair Notice.

The due process clause of the Fifth Amendment commands that a regulated entity be given notice of standards it must obey. Simply put: to comply with the law, the regulated entity must be able to discern what the law is. *See FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012) ("A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is . . . required."); *Yamada v. Snipes*, 786 F.3d 1182, 1187 (9th Cir. 2015) ("regulated parties should know what is required of them so they may act accordingly"). "Fair notice is not provided unless a regulated party acting in good faith is able to identify with 'ascertainable certainty,' on the face of regulations and other public statements issued by the agency, the standard to which the regulating agency expects it to conform." *United States v. Hoechst Celanese Corp.*, 964 F. Supp. 967, 979 (D.S.C. 1996), *aff'd in part, rev'd in part on other grounds*, 128 F.3d 216 (4th Cir. 1997) (*quoting Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995)).

The face of the regulations, the Forest Service's statements, and the Forest Service's unbroken course of conduct over the past 25-plus years all indicate that the 1987 Letter was a timely and sufficient application for renewal of SUP #7285. If something more was required, the Forest Service never said so, thus denying NWNA and its predecessors-in-interest the opportunity to cure any deficiencies at that time, or at any time over the past 30 years. Under these circumstances, the Forest Service would be precluded from enforcing any new requirements with respect to NWNA's predecessor's renewal application for SUP #7285. *See Fox Television Stations*, 132 S. Ct. at 2317; *Hoechst Celanese*, 964 F. Supp. at 979.

## C. If the Court Determines the Additional Requirements in 36 C.F.R. § 251.54(e)(1)-(4) (1987) Apply, Then They Should Only Apply Prospectively.

Should this Court determine that the Forest Service's regulations require anything beyond the 1987 Letter to qualify as a timely and sufficient application for renewal of SUP #7285, those new requirements should not be applied retroactively.

The Supreme Court has identified three factors a court must consider in determining whether to apply a newly formulated rule retroactively: (1) whether the decision establishes "a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed"; (2) whether retroactive application "will further or retard" the purpose of the rule in question; and (3) whether applying the new decision will "produce substantial inequitable results." *Chevron Oil v. Huson*, 404 U.S. 97, 106-07 (1971).[2]

As applied here, this *Chevron Oil* test requires that any additional requirements only be applied prospectively. First, any additional requirements would be new—the Forest Service has never required more than timely notice (given via the 1987 Letter). Moreover, the interested parties here have relied on that interpretation of the Forest Service's regulations for over 30 years. As we have explained previously, NWNA itself has expended millions of dollars in reliance on the Forest Service's confirmation

---

[2] The Supreme Court called into question *Chevron Oil*'s holding in *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993). However, the Ninth Circuit still considers *Chevron Oil* good law. *See Nunez-Reyes v. Holder*, 646 F.3d 684, 692 (9th Cir. 2011) ("As a circuit court, even if recent Supreme Court jurisprudence has perhaps called into question the continuing viability of its precedent, we are bound to follow a controlling Supreme Court precedent until it is explicitly overruled by that Court. We therefore remain bound by *Chevron Oil*." (internal citations omitted) (internal quotation marks omitted)).

7

[PROPOSED] SUPPLEMENTAL *AMICUS CURIAE* BRIEF OF
NESTLÉ WATERS NORTH AMERICA INC.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

that the 1987 Letter was a timely and sufficient application for renewal of SUP #7285. NWNA *Amicus* Br. at 6-7.

Second, the purpose of the Forest Service's regulations would not be hindered by applying any new requirements prospectively only. The Forest Service's renewal regulations are ministerial—they merely prescribe what the Forest Service considers necessary to trigger its obligation to determine whether, and under what conditions, to grant renewal of an SUP. While the Forest Service cannot be accused of acting hastily in processing the request for renewal here, there is no dispute that it has recognized that it is responsible for the next steps in processing the renewal of SUP #7285.

Furthermore—expanding the lens only slightly—retroactive application of any newly-announced requirements would contravene Congress's strong policy preference documented in 5 U.S.C. Section 558(c). Through Section 558(c), Congress sought to shield permittees from the potential lapse of a permit due to agency inaction. As Justice Burton explained in 1957, "[t]he policy behind [558(c)] is that of protecting those persons who already have regularly issued licenses from the serious hardships occasioned both to them and to the public by expiration of a license before the agency finds time to pass upon its renewal." *Pan-Atl. S.S. Corp. v. Atl. Coast Line R.R. Co.*, 353 U.S. 436, 444-45 (1957) (Burton, J., dissenting). The Attorney General's 1947 Administrative Procedure Act manual makes the same observation, noting that where a permittee has filed a sufficient renewal application before the expiration of the permit, "the licensee has done everything that is within his power to do and he should not suffer if the agency has failed, for one reason or another, to consider his application prior to the lapse of his license." *Attorney General's Manual on the Administrative Procedure Act* 91-92 (1947). Retroactive application of any new renewal requirements here would contravene these long-standing policy considerations.

Finally, retroactive application would be most inequitable. NWNA and its predecessors have reasonably relied for nearly 30 years on Forest Service representations that they would have continued use of the right-of-way across National Forest land, at least while the Forest Service considered the renewal request for SUP #7285. NWNA and its predecessors have, on that basis, invested millions of dollars in infrastructure in direct reliance on these representations.

### III. CONCLUSION

For the reasons set forth above, this Court should adopt Federal Defendants' interpretation of the Forest Service regulations with regard to special use authorization renewals and their sufficiency under 5 U.S.C. § 558(c), and allow the Forest Service to focus its attention on completing the reissuance process for SUP #7285, now well underway.

Dated: June 24, 2016

**HUNTON & WILLIAMS LLP**

By: /s/ Robert M. Johnson
    ROBERT M. JOHNSON
Attorneys for *Amicus Curiae*
NESTLÉ WATERS NORTH AMERICA INC.