JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 15-2098-JGB (DTBx)** | Date | September 20, 2016 |
| Title | *Center For Biological Diversity et al. v. United States Forest Service et al.* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiffs: | Attorney(s) Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings:** **Order: (1) DENYING Plaintiffs Center For Biological Diversity, Story of Stuff Project, and Courage Campaign Institute's Motion for Summary Judgment (Doc. No. 25); (2) GRANTING Defendants Randy Moore, Jody Noiron, and United States Forest Service's Motion for Summary Judgment (Doc. No. 28); and (3) DENYING Plaintiffs Center For Biological Diversity, Story of Stuff Project, and Courage Campaign Institute's Motion to Amend Administrative Record (Doc. No. 27) (IN CHAMBERS)**

Before the Court is: (1) a Motion for Summary Judgment filed by plaintiffs Center For Biological Diversity, Story of Stuff Project, and Courage Campaign Institute (collectively "Plaintiffs") ("Pl. MSJ," Doc. No. 25); (2) a Motion for Summary Judgment filed by defendants Randy Moore, Jody Noiron, and United States Forest Service ("USFS") (collectively "Defendants") ("Def. MSJ," Doc. No. 28); and (3) a Motion to Amend Administrative Record filed by Plaintiffs (Doc. No. 27). After considering all papers timely filed in support of and in opposition to the motions, the Court: (1) DENIES Plaintiffs' Motion for Summary Judgment; (2) GRANTS Defendants' Motion for Summary Judgment; and (3) DENIES Plaintiffs' Motion to Amend Administrative Record. This action is DISMISSED with prejudice.

## I.   BACKGROUND

On October 13, 2015, Plaintiffs filed a Complaint against USFS, Pacific Southwest Regional Forester Randy Moore, and San Bernardino National Forest Supervisor Jody Noiron. (Doc. No. 1.) The Complaint arises out of allegations Defendants have unlawfully allowed Nestlé Waters North America, Inc. ("Nestlé") to operate water diversion and transmission facilities on USFS land in and near the West Fork of Strawberry Creek ("West Strawberry Diversion Structures") in the San Bernardino National Forest without a special use permit. (Id.)

Plaintiffs claim Defendants' actions violate the Federal Land Policy Management Act ("FLPMA") and the Administrative Procedure Act ("APA"). (Id.)

On January 28, 2016, Defendants lodged the Administrative Record for this matter with the Court, in the form of a compact disc.[1] (Doc. No. 24.)

On February 5, 2016, Plaintiffs filed their Motion for Summary Judgment ("Pls. MSJ," Doc. No. 25, 25-1) and a supporting Statement of Undisputed Facts (Doc. No. 25-2).

On February 26, 2016, Plaintiffs filed their Motion to Amend Administrative Record, seeking to amend the Administrative Record to include twenty-three documents. ("Mot. to Amend," Doc. No. 27, 27-1.) Specifically, Plaintiffs seek to amend the Administrative Record to include two declarations by Story of Stuff Project's counsel Rachel S. Doughty (hereinafter "Doughty Decl. I" and "Doughty Decl. II") and twenty-three accompanying exhibits (Doc. No. 17-4, 25-4). (Id.) On March 18, 2016 Defendants filed an Opposition to Plaintiffs' Motion to Amend Administrative Record and an Index of the Administrative Record. ("Opp. to Mot. to Amend," Doc. No. 30, 30-1.) On April 8, 2016, Plaintiffs filed a Reply to Defendants' Opposition. ("Mot. to Amend Reply," Doc. No. 31.)

On February 26, 2016, Defendants filed their Motion for Summary Judgment ("Defs. MSJ," Doc. No. 28, 28-1), attaching the following supporting documents:

- A first declaration by Noiron ("Noiron Decl. I," Doc. No. 28-2);
- Excerpts from the February 2002 USFS Special Uses Handbook ("Defs. MSJ, Ex. B," Doc. No. 28-3);
- Statement of Disputed and Undisputed Facts ("Defs. SUF," Doc. No. 28-4)[2]; and
- Objections to Plaintiffs' Statement of Undisputed Facts (Doc. No. 28-5).

On March 18, 2016, Plaintiffs filed a combined brief in support of their Motion for Summary Judgment and in opposition to Defendants' Motion for Summary Judgment, and two attachments. ("Pls. Opp.," Doc. No. 29.) In support, Plaintiffs filed the following documents:

- Statement of Genuine Disputes of Material Facts ("Pls. SUF," Doc. No. 29-1); and
- A third declaration by Rachel S. Doughty and seven accompanying exhibits ("Doughty Decl. III," Doc. No. 29-2).

---

[1] The Court's citations to Administrative Record materials reference the unique Bates number associated with each document in the Administrative Record.

[2] Defendants' Statement of Disputed and Undisputed Facts contains two lists of disputed and undisputed facts: one submitted by Plaintiffs with Defendants' comments, and one submitted by Defendants. The Court's citations to particular facts in this statement refer to facts submitted by Plaintiffs with Defendants' comments.

On April 8, 2016, Defendants filed a Reply in support of their Motion for Summary Judgment. ("Defs. Reply," Doc. No. 32.) In support, Defendants filed a second declaration by Noiron ("Noiron Decl. II") and a supporting exhibit. (Doc. No. 32-1.)

On April 20, 2016, the Court issued an order directing supplemental briefing by the parties as to whether Plaintiffs are entitled to injunctive relief under the FLPMA and APA. (Doc. No. 33.) On May 6, 2016, Plaintiffs filed their supplemental brief ("Pls. Supp. Brief") and four supporting declarations by: (1) Steve Loe; (2) Gary A. Earney; (3) Tom Myers; and (4) Ileene Anderson. (Doc. No. 43, 43-1, 43-2, 43-3, 43-4.) On the same date, Defendants filed their supplemental brief ("Defs. Supp. Brief") and a third declaration by Noiron ("Noiron Decl. III"). (Doc. No. 44, 44-1.)

On May 12, 2016, Nestlé filed an Amicus Curae brief ("Nestlé Amicus") and a supporting declaration by Larry Lawrence ("Lawrence Decl."). (Doc. No. 48, 48-1.) On May 19, 2016, Plaintiffs filed an Opposition to the Amicus Curae brief, a fifth declaration by Rachel S. Doughty, and eleven exhibits. (Doc. No. 51, 51-1.)

On June 13, 2016, the Court directed additional briefing. (Doc. No. 52.) On June 24, 2016, the parties filed their supplemental briefs. ("Pls. Supp. Brief II" and "Defs. Supp. Brief II," Doc. No. 54, 55.)

On June 28, 2016, Nestlé filed a supplemental Amicus Curae brief ("Nestlé Supp. Amicus"). (Doc. No. 57.) On July 6, 2016, Plaintiffs filed an Opposition. (Doc. No. 58.)

On July 7, 2016, Defendants filed a Notice of Supplemental Authority, alerting the Court to a recent decision in Sierra Club v. United States Forest Serv., No. 15-2457, 2016 WL 3606742 (6th Cir. June 30, 2016). (Doc. No. 59.) On July 9, 2016, Plaintiffs filed a response. (Doc. No. 60.)

## II. LEGAL STANDARD

The Court reviews final agency actions under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq. The court does not determine whether there are disputed issues of material fact as it would in a typical summary judgment proceeding; its review is based on the administrative record. 5 U.S.C. § 706(2)(F); Nw. Motorcycle Ass'n. v. U.S. Dept. of Agriculture, 18 F.3d 1468, 1472 (9th Cir. 1994); see also South Yuba River Citizens League v. Nat'l Marine Fisheries Serv., 723 F. Supp. 2d 1247, 1256 (E.D. Cal. 2010) (usual summary judgment standards do not apply). The Court must consider whether the agency's actions, findings, and conclusions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . ." 5 U.S.C. § 706(2)(A). The Court's inquiry must be "searching and careful, but the ultimate standard is a narrow one." Marsh v. Or. Natural Res. Council, 490 U.S. 360, 378 (1989) (internal quotations and citation omitted).

Under this narrow standard, a decision is arbitrary and capricious only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the

agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. Lands Council v. McNair, 629 F.3d 1070, 1074 (9th Cir. 2010) (internal quotation marks and citation omitted). "In making this inquiry, [the Court asks] whether the agency considered the relevant factors and articulated a rational connection between the facts found and the choice made." Natural Res. Def. Council v. U.S. Dep't. of the Interior, 113 F.3d 1121, 1124 (9th Cir. 1997) (internal quotation marks and citation omitted).

### III.   UNDISPUTED FACTS

On August 2, 1978, USFS issued a "Special Use Permit" ("SUP") identified by user number 7285 to Arrowhead Mt. Spring Water Company, Inc. ("Arrowhead").[3] (Pls. SUF ¶ 8; NES000142.) The SUP granted a "right-of-way not to exceed five (5) feet in width and approximately 23,020 feet in length across portions of National Forest land." (Id.) The SUP allowed Arrowhead to "maintain[] . . . water transmission lines, necessary service trails to maintain pipelines and water collection tunnels, horizontal wells, and spring boxes." (Id.) The SUP required Arrowhead to pay to USFS an annual fee of $220 for this use, which could later be "readjusted . . . to place the charges on a basis commensurate with the value of use authorized by" the SUP. (Id.) Clause 13 of the SUP provided as follows:

> This permit is not transferable. . . . [I]f the person to whom title to [] improvements shall have been transferred . . . is qualified as a permittee and is willing that his future occupancy of the premises shall be subject to such new conditions and stipulations as existing or prospective circumstances may warrant, his continued occupancy of the premises may be authorized by permit to him if, in the opinion of the issuing officer or his successor, issuance of a permit is desirable and in the public interest.

(NES000142.)

On June 24, 1981, the SUP was amended so that Clause 23 of the SUP read as follows:

> Unless sooner terminated or revoked by the Forest Service in accordance with the provisions of the permit, this permit shall, subject to annual revalidation by the Forest Service and payment of fees by the permittee, expire and become void on 8/2/1988, but a

---

[3] Plaintiffs briefly contend in a footnote that Nestlé cannot hold the SUP because it was originally issued to Arrowhead and could not be transferred to any other entity under its express terms. (Pls. Opp. at 17 n.6.) This contention is meritless. Defendants present evidence showing USFS was informed that Nestlé merged with Arrowhead as early as 1993. (See NES000295 at 1.) Plaintiffs offer no evidence in opposition as to this issue. The SUP was therefore not impermissibly "transferred" from one entity to another: the entity possessing the SUP simply changed its name.

>    new permit to occupy and use the same National Forest land may
>    be granted provided the permittee will comply with the then
>    existing laws and regulations governing the occupancy and use of
>    National Forest lands and shall have notified the Forest Supervisor
>    not less than 1 year prior to said date that such new permit is
>    desired.

(Pls. SUF ¶ 10; NES000176.)

Frank H. Schiller, the Vice President of Manufacturing of the Beatrice Bottled Water Division[4] (a subsidiary of Beatrice Companies, Inc.) sent a letter dated May 12, 1987 to USFS District Ranger Richard Stauber. (Pls. SUF ¶ 14; NES000208.) In the letter, Schiller claimed Beatrice Bottled Water Division had been "transporting water via a pipeline across Federal Forest Land for the past 60 plus years" "under User Permit No. 7285." (See NES000208 at 1.) Schiller claimed the permit in question would expire in August 1988 and stated "it is our intention, with this letter, to request the Forestry Service to renew this permit and send to my attention any documents, forms and instructions needed for this purpose." (Id.) The parties have not submitted evidence of any further correspondence between USFS and Schiller or other representatives of Beatrice Bottled Water Division, or any evidence showing USFS ever acted on Schiller's request to renew the SUP.

Ron Lansing, the Production Manager of "Arrowhead Drinking Water Co.," sent a letter dated July 25, 1988 to San Bernardino National Forest Lands Assistant Gary A. Earney. (NES000217.) In the letter, Lansing referenced a prior phone conversation the previous week with Earney about "our User Permit No. 7285." (Id.) Lansing noted he and Earney had discussed that the permit in question was "due for renewal on August 1, 1988" and that Arrowhead Drinking Water Co. was "concerned that it could expire and [was concerned about] the possible problems that could cause." (Id.) Lansing stated it was "his understanding from the conversation" that Earney would not get a new permit completed by August and "possibly not until late in the year." (Id.) Lansing also stated he understood that Earney had promised that "the present permit, conditions, and fee structures will remain in place until the new permit is issued" and that Arrowhead Drinking Water Co. could continue to "conduct 'business a[s] usual' in reguards [sic] to [its] springs and pipeline." (Id.) The parties have not submitted evidence of any further correspondence between Earney and Lansing.[5]

---

[4] The precise relationship between Arrowhead, Nestlé, and Beatrice Bottled Water Division is unclear from the record.

[5] The Administrative Record contains pre-1994 records relating to the SUP. In their Motion to Amend Administrative Record, Plaintiffs seek to amend the Administrative Record lodged by Defendants to include a number of post-1994 documents relating to the SUP. (Mot. to Amend at 6-7.) In particular, Plaintiffs seek to amend the administrative record to include annual billing statements showing USFS has been collecting fees from Nestlé for its operations in the San Bernardino National Forest. (Id. at 6.)

When reviewing agency action under the APA, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the (continued . . .)

IV.     DISCUSSION

Plaintiffs argue USFS has unlawfully permitted Nestlé to continue operating the West Strawberry Diversion Structures, in violation of the FLPMA.  Plaintiffs contend the SUP expired on August 2, 1988 and was never properly renewed.  (Pls. MSJ at 8-11.)  Hence, Plaintiffs seek either vacatur of USFS's "illegal license" or alternatively seek injunctive relief.  (Id. at 12-13.)

Defendants oppose Plaintiffs' claims on three grounds.  First, Defendants argue the SUP did not expire in August 1988 and is still valid by operation of law.  (Defs. MSJ at 16-22.)  Second, Defendants argue Plaintiffs have not identified a cognizable "final agency action" subject to judicial review under the APA because the SUP is valid by operation of law and not by any action by USFS.  (Id. at 5-13.)  Hence, Defendants argue the Court does not have jurisdiction over this action under the APA.  (Id.)  Third, Defendants argue Plaintiffs' challenge under the APA is untimely.  (Id. at 13-16.)

Defendants' jurisdictional arguments are based on their contention that the SUP is still valid.  Hence, the Court first addresses the validity of the SUP and then turns to whether Plaintiffs have challenged a cognizable "final agency action" subject to judicial review under the APA.[6]

---

( . . . continued)
reviewing court."  Camp v. Pitts, 411 U.S. 138, 142 (1973).  However, the Ninth Circuit has established four exceptions to this general rule, allowing the reviewing court to consider evidence outside the administrative record in the following circumstances: (1) if necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) when the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith.  Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv., 450 F.3d 930, 943 (2006).  "These limited exceptions operate to identify and plug holes in the administrative record. Though widely accepted, these exceptions are narrowly construed and applied."  Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir. 2005).

Here, because the Court concludes it lacks jurisdiction over this action based on the documents submitted in the Administrative Record alone, the Court finds the additional documents submitted by Plaintiffs are not necessary to disposition of the parties' Motions for Summary Judgment.  Accordingly, the Court DENIES Plaintiffs' Motion to Amend Administrative Record.  See Sw. Ctr. for Biological Diversity v. U.S. Forest Serv., 100 F.3d 1443, 1451 (9th Cir. 1996) (finding district court properly struck extra-record documents submitted by plaintiffs because "[t]he information contained in these documents can either be extracted from the record or is not necessary to this court's review of the Forest Service's action").

[6] The Court does not address Defendants' alternative argument that Plaintiffs' claim is untimely.

A. **Validity of the SUP**

The parties do not dispute that the SUP was originally set to expire on August 2, 1988. (Pls. SUF ¶ 10; NES000176.) Moreover, the parties do not dispute that USFS has not issued a new permit allowing Nestlé to operate the West Strawberry Diversion Structures. (Defs. SUF ¶ 11.) Rather, the parties dispute only whether the SUP actually expired on August 2, 1988 and is presently valid.

Defendants contend the SUP is valid under the FLPMA and the APA because the holder of the SUP in 1987 applied for renewal of the SUP prior to its expiration. (See Defs. MSJ at 16-22.) Defendants contend that under 5 U.S.C. § 558(c), the renewal application halted the SUP's expiration. (Id.) Plaintiffs respond that the renewal application in question was not "timely and sufficient," and that USFS did not timely act on it, as required to halt the SUP's expiration under 5 U.S.C. § 558(c). (Pls. Opp. at 13-22.) Hence, Plaintiffs argue the SUP expired on August 2, 1988. (Id.)

1. **Applicable Law**

The FLPMA authorizes the Secretaries of the Interior and Agriculture to "grant, issue, or renew rights-of-way over" public lands for "reservoirs, canals, ditches, flumes, laterals, pipes, pipelines, tunnels, and other facilities and systems for the impoundment, storage, transportation, or distribution of water." 43 U.S.C. § 1761(a)(1).

5 U.S.C. § 558(c) ("Section 558(c)") – a provision of the APA – contains a provision governing the renewal of licenses[7] granted by administrative agencies. Under Section 558(c), "[w]hen the licensee has made timely and sufficient application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency." 5 U.S.C. § 558(c). The statute also provides that "[w]hen application is made for a license required by law, the agency, with due regard for the rights and privileges of all the interested parties or adversely affected persons and within a reasonable time, shall set and complete proceedings required to be conducted in accordance with sections 556 and 557 of this title or other proceedings required by law and shall make its decision." Id. The purpose of this provision is "to protect a person with a license from the damage he would suffer by being compelled to discontinue a business of a continuing nature, only to start it anew after the administrative hearing is concluded." Pan-Atl. S. S. Corp. v. Atl. Coast Line R. Co., 353 U.S. 436, 439 (1957).

At the time the SUP was scheduled to expire, federal regulations required that applications for special use permits contain the following information: (1) the identity of the applicant; (2) technical and financial capability of the applicant to construct, operate, maintain,

---

[7] The APA defines "licenses" broadly as including "the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission[.]" 5 U.S.C. § 551(8).

and terminate the project for which authorization was requested; (3) a project description; (4) and an environmental protection plan.  See 36 C.F.R. §§ 251.54(e)(1)-(4) (1987).  Moreover, federal regulations stated that "[w]hen a special use authorization does not provide for renewal, it is discretionary with the authorized officer, upon request from the holder and prior to its expiration, whether or not the authorization shall be renewed."  Id. § 251.64(b) (1987).

### 2. The Parties' Contentions and Evidence

Defendants contend the SUP did not expire on August 2, 1988 under Section 558(c).  (Defs. MSJ at 16.)  In support, Defendants cite Frank H. Schiller's May 12, 1987 letter to USFS District Ranger Richard Stauber.  (Id.; see also NES000208.)  Defendants argue the letter constituted a "timely and sufficient application for a renewal" of the SUP that halted the SUP's expiration under Section 558(c).  (Id.)  Consequently, Defendants contend the SUP is and will remain valid by operation of Section 558(c) until USFS issues a final determination on whether to renew the SUP.  (Id.)

Plaintiffs argue the SUP is not valid under Section 558(c), on two grounds.  First, Plaintiffs argue Schiller's May 12, 1987 letter did not constitute a "timely and sufficient [renewal] application," under then-existing federal regulations because it did not include any of the information required for applications for special use permits under 36 C.F.R. §§ 251.54(e)(1)-(4) (1987), such as a project description or environmental protection plan.  (Pls. Opp. at 16-17.)  Moreover, Plaintiffs note there is no evidence Nestlé has ever submitted such information to USFS since May 1987.  (Id. at 17.)  Second, Plaintiffs argue that even if the letter did initially halt the SUP's expiration, USFS has failed to act on Schiller's request to renew the SUP for nearly thirty years.  (Id. at 20-22.)  Hence, Plaintiffs argue USFS cannot "hide behind Section 558(c) to indefinitely avoid its duties to protect the public interest, including in the proper management of forest resources."  (Id. at 22.)

Defendants contend both of Plaintiffs' arguments are meritless.  First, Defendants argue that the requirements for applications for *new* special use permits under 36 C.F.R. §§ 251.54(e)(1)-(4) (1987) did not govern applications for renewal of *existing* special use permits in 1987.  Instead, Defendants contend, 36 C.F.R. § 251.64(b) (1987) governed applications for renewal and only required holders of a permit to submit a "request . . . prior to its expiration."  (Defs. Reply at 8-9.)  Hence, Defendants assert that Schiller was not required to submit a project description, environmental protection plan, or any of the other information set forth in 36 C.F.R. §§ 251.54(e)(1)-(4) (1987).  (Id.)  Moreover, Defendants note "Nestlé was an existing permittee with an exceedingly long and continuous history of permitted operations" and "[USFS] already would have had in its possession much, if not all, of the information requested under this regulation."  (Defs. Reply at 10.)

Second, Defendants contend "[n]othing in Section 558(c) indicates an agency's failure to act may thwart the protection afforded to the holder of a license for a continuing activity."  (Id. at 10.)  Hence, Defendants contend USFS's delay in acting on Schiller's May 1987 letter has no legal effect on the validity of the SUP.  (Id. at 10-11.)

3.  **Analysis**

The Court concludes the SUP is still valid by operation of Section 558(c) and rejects both of Plaintiffs' arguments to the contrary. First, although the SUP was set to expire on August 2, 1988, Schiller's May 1987 letter constituted a "timely and sufficient application for a renewal" of the SUP under then-existing federal regulations, for purposes of Section 558(c). 36 C.F.R. § 251.64 (1987) (titled "Renewals") set forth the governing law regarding renewal procedures. Specifically, 36 C.F.R. § 251.64(b) (1987) provided that where, as here, a special use permit did not provide for renewal, the permit could be renewed simply "upon request from the holder and prior to its expiration."[8] The regulation did not set forth any additional requirements for submitting a request for renewal. Schiller's May 1987 letter, while brief, constituted a request for renewal that was submitted prior to the SUP's expiration on August 2, 1988. The letter, therefore, amounted to a "timely and sufficient application for [] renewal" under Section 558(c) that rendered the SUP valid beyond its stated expiration date.

Moreover, the Court is unpersuaded by Plaintiffs' argument that Nestlé was required to submit the additional information set forth in 36 C.F.R. §§ 251.54(e)(1)-(4) (1987) (such as a project description and an environmental protection plan), as part of its application for renewal of the SUP. As Defendants note, 36 C.F.R. § 251.54(e) only spoke to requirements for *new*

---

[8] In supplemental briefing, Plaintiffs contend 36 C.F.R. § 251.64(b) (1987) is inapplicable because the SUP, by its own terms, did not envision renewal and instead required the permittee to file an application for a new permit in order to render it valid after August 2, 1988. (Pls. Supp Brief II at 1.) In support, Plaintiffs note Clause 23 of the SUP stated it "'would become void on 8/2/1988, but a new permit . . . may be granted provided the permittee will comply with the then existing laws and regulations governing the occupancy and use of National Forest lands and shall have notified the Forest Supervisor not less than 1 year prior to said date that such new permit is desired'" upon notice to USFS. (Id. at 2 (quoting NES000176).) According to Plaintiffs, such language shows the SUP did not "provide for renewal." (Id. at 3.) Plaintiffs argue such language shows that any request to allow the SUP to run past its stated expiration date had to take the form of an application for a "new permit." (Id. at 3.) In other words, Plaintiffs maintain that a request to allow the SUP to stay valid after August 2, 1988 had to comply with 36 C.F.R. § 251.54(e)'s then-existing requirements for applications for new special use permits. (Id. at 3.)

The Court is unpersuaded by this argument. 36 C.F.R. § 251.64(b) (1987) expressly states that "[w]hen a special use authorization does not provide for renewal, it is discretionary with the authorized officer, upon request from the holder and prior to its expiration, whether or not the authorization shall be renewed." 36 C.F.R. § 251.64(b) (1987) (emphasis added). If, as Plaintiffs apparently maintain, the SUP did not "provide for renewal," Section 251.64(b) would automatically permit renewal upon "request from the holder . . . prior to its expiration." Id. Moreover, the plain language of Clause 23 of the SUP does not support Plaintiffs' interpretation of the provision. Clause 23 did not foreclose or even discuss the possibility of renewal of the exiting permit: it merely required advance notice if the holder of the SUP wished to procure a "new permit." (See NES000176.)

special use permits. Indeed, no provision of Section 251.54(e) indicated it set forth requirements for renewing an existing special use permit. Rather, when construed together, the plain text of Sections 251.54 and 251.64 indicate that Section 251.54 solely governed applications for new special use permits while Section 251.64 governed applications to renew existing special use permits.[9] See Freedom From Religion Found. v. Weber, 628 F. App'x 952, 956 (9th Cir. 2015) (Smith J., concurring) (noting when analyzing identical versions of the regulations that "[r]enewals of existing special use permits are governed by 36 C.F.R. § 251.64" and 36 C.F.R. § 251.54(e)'s requirements do "not apply to renewals of *existing* special use permits") (emphasis in original). Hence, the Court concludes the requirements for special use permit applications set forth in 36 C.F.R. §§ 251.54(e)(1)-(4) (1987) are inapplicable to permit renewals and do not govern whether Schiller's May 1987 letter constituted a "timely and sufficient application for a renewal" of the SUP, under Section 558(c).

Second, the Court rejects Plaintiffs' contention that USFS's failure to act on Schiller's letter for thirty years renders the SUP invalid under Section 558(c). While Section 558(c) requires that a federal agency considering an "application . . . for a license required by law" act on it "within a reasonable time," Plaintiffs do not identify and the Court cannot find any authority holding that an agency's failure to act within a reasonable time can invalidate the license before it is finally determined by the agency. 5 U.S.C. § 558(c). Indeed, such an interpretation would contravene Section 558(c)'s purpose of "protect[ing] a person with a license from the damage he would suffer by being compelled to discontinue a business of a continuing nature, only to start it anew after the administrative hearing is concluded." Pan-Atl. S. S. Corp., 353 U.S. at 439.

Hence, the Court concludes the SUP is still valid by operation of Section 558(c). See Sierra Club v. United States Forest Serv., No. 15-2457, 2016 WL 3606742, at *5 (6th Cir. June 30, 2016) (holding request for renewal rendered special use permit valid past expiration date under Section 558(c)).

**B.      Jurisdiction under the APA**

   **1.      Applicable Law**

Section 704 of the APA provides for judicial review of an "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704 ("Section 704"). For an agency action to be "final," two conditions must be satisfied: "[f]irst, the action must mark the consummation of the agency's decisionmaking process . . . [a]nd second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 177-78 (1997). "The finality requirement is to be applied in a 'flexible' and 'pragmatic' way, and courts are 'guided by a presumption of reviewability.'" Okinawa Dugong v. Gates, 543 F. Supp. 2d 1082, 1092 (N.D. Cal. 2008) (quoting Abbott Labs v. Gardner, 387 U.S. 136, 149-52 (1967)).

---

[9] In supplemental briefing, Plaintiffs concede "section 251.64 . . . govern[s] renewals to the exclusion of section 251.54(e)." (Pls. Supp Brief II at 1.)

The finality requirement of Section 704 is "jurisdictional" in quality. Oregon Nat. Desert Ass'n v. United States Forest Serv., 465 F.3d 977, 982 (9th Cir. 2006).

The Ninth Circuit has held that "day-to-day operations that merely implement operational plans" do not constitute "final agency actions." Wild Fish Conservancy v. Jewell, 730 F.3d 791, 801 (9th Cir. 2013). In Jewell, plaintiffs challenged the Fish and Wildlife Service's actions in closing gates at a dam, which diverted water and obstructed fish passage through certain waterways. Id. at 794. The Ninth Circuit held that the closing of the gates was not a challengeable final agency action because the "individual acts of closing gates . . . do not 'mark the consummation of the agency's decisionmaking process' . . . because they constitute day-to-day operations that merely implement operational plans." Id. The Ninth Circuit noted that "the APA's requirement of final agency action precludes [courts from] undertaking a general judicial review of [an agency's] day-to-day operations." Id. at 802 (citing Mont. Wilderness Ass'n, Inc. v. U.S. Forest Serv., 314 F.3d 1146 (9th Cir. 2003), vacated on other grounds, 542 U.S. 917 (2004) (holding that the agency's 'routine maintenance work' on federal lands is not final agency action because these activities 'implement [the agency's] travel management and forest plans' for the lands at issue)).

### 2. The Parties' Contentions

Plaintiffs argue they have challenged an identifiable and final agency action, for purposes of Section 704. Plaintiffs claim to challenge USFS's annual collection of fees from Nestlé for its operations in the San Bernardino National Forest. (Pls. Opp. at 6.) Plaintiffs claim USFS's collection of fees from Nestlé amounts to "periodic federal approval" that is "necessary for Nestlé's operations." (Id. at 8.)

Defendants respond that USFS's annual collection of fees from Nestlé is merely a "ministerial act[]" that charges Nestlé the fees it owes under the SUP for its continued operations in the San Bernardino National Forest. (Defs. Reply at 3.) For the reasons discussed in Section IV.A.2., Defendants maintain the SUP has been rendered valid past its stated expiration date by operation of Section 558(c) and not by any action by USFS. (Id. at 4-5.) Consequently, Defendants argue USFS's collection of fees is merely a "day-to-day operation" implementing the SUP's terms and is not a "final agency action" subject to review under the APA. (Id.)

### 3. Analysis

The Court concludes USFS's annual collection of fees does not constitute a "final agency action" subject to judicial review under the APA. As Plaintiffs themselves acknowledge, "if there were a valid permit under which payments were made each year," the permit itself would "mark[] the final consummation of the agency's decision." (Pls. Opp. at 9.) Because Plaintiffs contend the SUP expired in 1988, Plaintiffs argue "each new acceptance of payment marks a new decision providing a license to allow Nestlé to continue its operation despite the lack of a valid permit." (Id.)

However, as the Court concluded in Section IV.A.3., the SUP is still valid by operation of Section 558(c). Consequently, as Plaintiffs themselves appear to acknowledge, USFS's

collection of payments from Nestlé does not constitute either the "consummation of the agency's decisionmaking process" or a decision "by which rights or obligations have been determined, or from which legal consequences will flow." Bennett, 520 U.S. at 177-78.  Rather, USFS's collection of fees amounts to no more than a "day-to-day operation" charging Nestlé the fees it owes under the SUP, which is itself valid by operation of Section 558(c).  See Jewell, 730 F.3d at 802.  Consequently, under Section 704, the Court does not have jurisdiction to entertain Plaintiffs' challenge under the APA.

Accordingly, the Court DENIES Plaintiffs' Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment insofar as it contends the Court lacks jurisdiction over this action under the APA.

## V.   CONCLUSION

For the reasons set forth above, the Court: (1) DENIES Plaintiffs' Motion for Summary Judgment; (2) GRANTS Defendants' Motion for Summary Judgment; and (3) DENIES Plaintiffs' Motion to Amend Administrative Record.  This action is DISMISSED with prejudice.

**IT IS SO ORDERED.**